THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VICTOR SMITH, Defendant-Appellant.

First District (3rd Division)   No. 77-1401

Opinion filed December 20, 1978.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Victor Smith, was charged with the offenses of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), and aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4). Following a jury trial in the circuit court of Cook County, the defendant was found guilty of robbery and sentenced to a term of two to six years in the Illinois Department of Corrections. The defendant appeals from that conviction. On appeal, the defendant makes arguments concerning the burden of proof, jury instructions, and alleged constitutional violations.

Prior to trial a hearing was held on the defendant's motion to quash the arrest and suppress evidence. Officer Robles, testifying for the State, said that on May 22, 1975, at about 3:50 a.m., he and his partner were on patrol in a marked police car when they halted a 1972 Cadillac which had failed to make a complete stop at the stop sign at 52nd and Halsted Streets in Chicago. Victor Smith was the driver of the Cadillac and was released without a ticket after he produced a driver's license and vehicle registration.

Within 20 minutes of that stop Robles heard a radio message indicating a suspect named "Vic," driving a 1972 Cadillac, was wanted for a strong arm robbery. Vic was described as a male Negro, 5' 10" or 5' 11" in height, and 150 to 160 lbs. in weight. The address of the robbery was also given. Robles had first observed the Cadillac about 200 to 300 feet from that address. The officers obtained the defendant's address and located him, still in his Cadillac, within 20 minutes of the time they received the message. The court denied the motion to quash arrest and to suppress evidence.

At trial the State's witnesses related the following facts: On May 22, 1975, Gwendolyn Johnson was employed as a barmaid at the Rumpus Room Cocktail Lounge. At 2:30 a.m., when she finished working, Johnson and her cousin and roommate, Evelyn Collins, looked for a cab to take them home. The defendant approached them and offered them a ride. The offer was accepted and the three walked to the defendant's Coupe de Ville Cadillac. Jessie, a friend of the defendant, joined them at the car and they drove to Johnson's apartment. During that ride, Johnson mentioned that she had been paid that evening. The four persons went up to Johnson's apartment and the men soon left, telling Johnson and Collins that they would be back.

Twenty minutes later Johnson saw the defendant and another man standing at her front door. Johnson went downstairs, opened the door, and the defendant and Norman Witherspoon entered. Johnson thought Witherspoon was Jessie when she opened the door. Witherspoon grabbed Johnson, put his arm around her neck and stuck a screwdriver in her back.

The defendant led the way up to Johnson's apartment while Witherspoon held on to Johnson. At Witherspoon's direction, Johnson called her cousin, who emerged from the bathroom. The four of them went to the front room where Witherspoon asked Johnson for her money. Johnson removed $55 from her bra and gave it to Witherspoon. Witherspoon accused Johnson of having more money, but she denied it.

Witherspoon ordered Johnson and Collins to lie down on the floor. He kicked Johnson in the ribs and head while demanding more money. Johnson told Witherspoon she did not have more money and that he could take anything else he wanted. Witherspoon asked for some string and Johnson directed the defendant to the kitchen drawer. The defendant gave the string to Witherspoon. At Witherspoon's direction, the defendant unplugged the television and began to wrap it up, along with the stereo.

Witherspoon continued to demand more money from Johnson and cut her wrist with the screwdriver when she denied having any more. He then tied up Johnson and Collins. The men left without the stereo or television and locked the women in the apartment. Johnson called out the window to her mother, who lived in the building in front of Johnson's apartment. Johnson's mother, along with some other family members, came to the apartment with an extra set of keys. Johnson's aunt called the police and they arrived as Johnson was being untied. The women told the police they knew the defendant but did not know his last name. Johnson was taken to the hospital after being interviewed by the police.

Johnson received a phone call from the defendant while she was in the hospital. The defendant offered her his $200 bond if she would not show up in court.

Officer Epstein's testimony was essentially the same as Officer Robles', his partner, except that Epstein testified that the two officers proceeded to the scene of the robbery upon receiving a radio message, while Robles' testimony did not include this fact. Epstein observed that Johnson had been "roughed up," and he described the wounds on her body. When Johnson said she knew one of the perpetrators as "Vic," Epstein asked if his last name was Smith, and Johnson said she believed it was. Epstein also testified that upon the defendant's arrest he found the defendant's car keys but did not recall finding Johnson's apartment keys or the screwdriver. He testified that he found $20 in the possession of Witherspoon, who was arrested with the defendant.

On cross-examination, Epstein admitted his arrest report did not indicate that he went to the scene of the crime and talked to Johnson after getting the radio message, nor that he had personally observed Johnson's physical condition. Epstein said he had completed two reports of the incident. At a side bar conference, defense counsel indicated that he had

only one of the reports and asked for the other, which Epstein admitted using to refresh his recollection before taking the stand. The Assistant State's Attorney responded that he did not have a copy of the report.

The only witness called by the defense was Officer Moss who testified that he was called to the scene of the crime where he saw Johnson lying on the floor, confused, hysterical and screaming. Moss testified that Johnson appeared to have been beaten up, but that he could recall no bleeding.

First, the defendant contends that the testimony of the State's witnesses was so improbable, unconvincing and contrary to human experience as to raise a reasonable doubt of guilt of the defendant. The defendant bases this argument on many points, including the facts that he made no attempt to conceal his identity during the robbery even though Johnson and Collins both admitted knowing the defendant prior to the robbery; the defendant made no attempt to avoid apprehension by the police following the robbery; the testimony concerning the extent of Johnson's injuries was conflicting; neither the $55, Johnson's apartment keys, nor the screwdriver were found in the defendant's car at the time of the arrest; and that the descriptions of the defendant given the police by Johnson and Collins not only conflicted with each other, but also conflicted with the description which Robles said he received on the radio.

The People respond that the evidence was consistent, credible, corroborated, and more than sufficient to establish the defendant's guilt beyond a reasonable doubt.

It was the jury's duty to weigh the evidence and assess the credibility of the witnesses. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.) We do not find the evidence so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People v. Chapman* (1977), 49 Ill. App. 3d 553, 364 N.E.2d 577.) Furthermore, the minor and easily explicable inconsistencies complained of by the defendant will not justify the reversal of his conviction. In *People v. Henderson* (1976), 36 Ill. App. 3d 355, 367, 344 N.E.2d 239, 249, the court noted: "Minor discrepancies and inconsistencies in testimony do not render that testimony unworthy of belief, but go only to the weight to be given that testimony."

The defendant next complains of two jury instructions: one concerned an admission instruction which was given; the other, which was refused, concerned the police report. The defendant argues the jury was improperly instructed in the following terms:

"You have before you evidence that the defendant made an admission of a fact relating to the crime charged in the indictment. It is for you to determine whether the defendant made the

admission, and, if so, what weight should be given to the admission. In determining the weight to be given to an admission, you should consider all of the circumstances under which it was made." (IPI Criminal No. 3.06.)

This instruction was based on Johnson's testimony that the defendant offered her his $200 bond if she would not show up in court. The defendant contends that the offer did not constitute an admission because he did not admit that he committed any act in his offer and because such an offer might be made irrespective of a person's guilt or innocence. The State responds that this instruction was based upon evidence constituting an admission and that the jury was properly instructed.

An admission has been defined as "any statement or conduct from which guilt of the crime may be inferred but from which guilt does not necessarily follow." (*People v. Stanton* (1959), 16 Ill. 2d 459, 466, 158 N.E.2d 47, 51; accord, *People v. Kurzydlo* (1974), 23 Ill. App. 3d 791, 320 N.E.2d 80.) The parties have not referred us to any cases in which the defendant sought to induce the witness against him not to testify. However, there are reported cases on this subject. In *Segal v. United States* (8th Cir. 1957), 246 F.2d 814, the defendant complained of the court's receiving as evidence testimony that the defendant admitted having induced a witness to perjure herself, and evidence that he attempted to impede another witness from testifying. The court noted: "The evidence was clearly admissible. The acts and words of the defendant were in the nature of admissions and they tended to corroborate the testimony of the witness * * *. Evidence of a defendant's attempt to tamper with or impede a witness is admissible as an act of admission." (246 F.2d 814, 818.) In *People v. Gambony* (1948), 402 Ill. 74, 83 N.E.2d 321, the People's witnesses testified the defendant had tried to bribe them to drop the case or to testify in his favor. The court described this testimony as concerning "the efforts of plaintiff in error to negotiate a settlement through bribery." (402 Ill. 74, 80.) The court concluded "[i]n a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence." (*Gambony*, at 80.) Finally, in *People v. Young* (1967), 82 Ill. App. 2d 461, 226 N.E.2d 417 (abstract), the court found admissible evidence that the defendant went to the complaining witness and offered him money if he would not testify. While these cases do not recognize, as the defendant urges, the "equivocal" nature of defendant's attempt to prevent the complainant from testifying, they do indicate the relevancy and admissibility of such evidence.

■ We believe the trial court correctly charged the jury on the law pertinent to this evidence. Guilt was inferable from the testimony that the

defendant offered the complainant $200 if she would refuse to testify. The instruction referred to the admission "of a fact"; it did not inform the jury that the statement was an "admission of guilt." Furthermore, the jury was given the choice of believing or not believing that the defendant made the statement at all. They were also instructed to decide what weight to give the admission and that, in making this determination they should consider "all of the circumstances under which it was made." We believe this instruction left the jury free to conclude that the defendant did not make a statement at all, or that the statement could be consistent with a finding of innocence.

The defendant also objects to the court's refusal of his proposed instruction concerning the police report. That non-IPI instruction read:

> "If you find, in your deliberation, that a police officer failed to assert or include a fact in his police report, when it would have been appropriate to have so asserted such fact, you may infer the non-existence of that fact."

The defense argued at trial that this instruction was justified by Officer Epstein's testimony that his report contained no reference to a visit to Johnson's apartment. The defendant also argues that he offered to revise the instruction but that his offer was refused by the State; and that the law permitted the jury to draw a negative inference from the failure of Epstein to include the significant facts and events in his report and should have been so instructed.

The State responds that the instruction was properly refused because it singled out the testimony of one witness; a modified form of the instruction rectifying this defect was never tendered to the court; and the proposed instruction was duplicative of the IPI instructions which were given.

The jury was given IPI Criminal Instructions Nos. 1.02 and 3.11, on the subjects of credibility of witnesses and concerning the manner in which they should consider a witcess' prior inconsistent statement. A prior inconsistent statement encompasses omissions as well as affirmative statements. (*Carroll v. Krause* (1938), 295 Ill. App. 552, 15 N.E.2d 323; *People v. Bell* (1976), 44 Ill. App. 3d 185, 357 N.E.2d 1256.) We also note that IPI Criminal No. 3.19, entitled "Weighing Police Testimony," states that the Committee recommends no instruction be given on this subject.

It is not error for the court to refuse a requested instruction which accurately states a principle of law applicable to a case, if that principle has already been covered correctly and sufficiently by another instruction which is given. (*People v. Hughes* (1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363.) We believe the IPI instructions on credibility of witnesses and prior inconsistent statements adequately instructed the jury on the

manner in which they should assess Epstein's failure to include certain facts in his written report.

■■ The defendant also argues his due process rights were violated because the State refused to produce both of Officer Epstein's arrest reports. While testifying, Epstein revealed that he had written two arrest reports in connection with the robbery. The defense asked the State for the second report and the State responded that it should be in the court file. The report could not be located in the court file. The State suggested that defense counsel proceed with his cross-examination of the officer and that if Epstein began "putting things into an arrest report" the State would try to locate it. The defense indicated this was an acceptable procedure and did not renew its request for the report. Under these circumstances we believe the defendant waived his right to complain of this alleged failure to comply fully with his discovery request. *People v. Myers* (1974), 20 Ill. App. 3d 83, 312 N.E.2d 741.

The defendant next argues that he was denied due process when the State failed to inform the jury that Epstein's testimony concerning his visit to the scene of the crime was contradicted by his partner's testimony at the pretrial hearing. This alleged "contradiction" is based on the fact that Officer Robles made no mention of the visit to the scene of the crime. When asked what the officers had done after receiving the radio message, Robles testified they drove around the area and located the defendant. He was never asked specifically if he had gone to the victim's home. The State does not make any claim of perjury.

■■ We believe the record does not demonstrate any due process violation. The fact that Robles' testimony at the pretrial hearing was less comprehensive than Epstein's does not amount to an error of constitutional magnitude or one that would warrant reversal of the defendant's conviction. We believe this argument to be without merit.

The defendant's final argument is that his right to a fair trial was denied where the State commented in closing arguments on his failure to testify. The defendant's primary complaint concerns the fact that the prosecutor continuously referred to the evidence on certain points as being "uncontradicted and unrebutted."

The prosecutor is forbidden from making any direct reference to a defendant's failure to testify. The defendant argues the prosecutor's remarks in his closing arguments amounted to this variety of commentary.

■■ The law is well settled that the prosecutor may refer to the testimony of the State's witnesses as being uncontradicted even where the defendant is the only person who could have contradicted it. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283.) For such remarks to be

impermissible, they must be intended or calculated to call the jury's attention to the fact that the defendant failed to testify. *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.

■■ The only witness for the defendant was Officer Moss. Officer Moss testified that he was called to Johnson's apartment where he saw Johnson lying on the floor confused, hysterical and screaming. He also testified that Johnson appeared to be beaten up, but that he could recall no bleeding. The officer could not remember if Johnson had pointed to some string and identified it as the string with which she had been tied up. Neither could he recall if the victim pointed to a television set and indicated that the men who had robbed her were going to take the set. This testimony did not directly contradict any of the State's evidence. The defendant offered no evidence as to other aspects of the crime. We believe the fact that the State ignored many minor inconsistencies in its own witnesses' testimony in calling that evidence "uncontradicted" may not be equated with impermissible comment on the failure of the defendant to testify.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.