THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL CANNON, Defendant-Appellant.

First District (4th Division)   No. 84—1584

Opinion filed December 11, 1986.

1010

James J. Doherty, Public Defender, of Chicago (Linda J. Seeley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Kay M. Ceresa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Darrell Cannon, was convicted of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2)), based on accountability, following a jury trial in the circuit court of Cook County. The trial judge sentenced defendant to the penitentiary for a term of natural life.

On appeal, defendant contends that he did not receive a fair trial because (1) the trial judge refused to suppress admissions that he made under police coercion; (2) the State did not disclose to the defense, during discovery, certain oral statements that he made; (3) the trial judge refused to give a jury instruction on prior inconsistent statements and an instruction on concealment of homicidal death; (4) the State referred to his street-gang affiliation throughout the trial and also referred to his admissions as a confession during closing argument; (5) the trial judge improperly sentenced him to a term of natural life; and (6) the State used its peremptory challenges during *voir dire* to exclude black venirepersons from the jury.

We affirm in part and remand, with directions.

Testimony at trial adduced the following facts. Darren Ross (the victim) and Kenneth Steele were both drug dealers. On October 26, 1983, at approximately 1 p.m., they went to 79th Street and Essex Avenue, in Chicago, to sell cocaine. When they arrived, Tyrone and A.D. McChristian were standing at that corner. Tyrone approached Ross and whispered in his ear while A.D. entered a blue (with a white half-top) 1975 Buick and drove away. Ross walked away. Steele did not see Ross alive again.

On the same day, Officer Henry Glees was assigned to the fifth police district and was working around 133rd Place and Evans Avenue, near the Altgeld Gardens housing project. Pursuant to a citizen's report, Officer Glees went to 13430 South Evans Avenue, at approximately 3:45 p.m., where he found a body (later identified as that of Darren Ross), which had a gunshot wound to the head.

Detective James O'Rourke, who also investigated the body at the above location, identified the dead person as Darren Ross by comparing fingerprints to those on file at the Chicago police department. Detective O'Rourke then went to Ross' last known address where he spoke with family members. Ross' brother then accompanied Detective O'Rourke to meet Kenneth Steele. After talking with Steele, O'Rourke began to look for A.D. and Tyrone McChristian, and A.D.'s automobile. The officer found the car the next day, October 27, 1983. The car was registered under an alias that A.D. once used. The car contained bloodstains that were the same blood type as that of the victim.

Detective Dan McWeeny was assigned to the Ross investigation on October 27,1983. After several unsuccessful attempts, he found Tyrone McChristian at a billiard hall on the corner of 79th Street and Essex Avenue. McWeeny identified Tyrone from a photograph and approached him. Tyrone agreed to speak with McWeeny and accompanied him to police headquarters. Tyrone spoke with the officer twice again on October 29, 1983. After these conversations, McWeeny began his search for defendant.

Later that day, Detective McWeeny obtained a photograph of defendant, which Tyrone identified. On November 1, 1983, the police obtained a warrant for the arrest of A. D. McChristian and defendant. Chicago police officers arrested defendant on the morning of November 2, 1983.

Detective McWeeny testified at trial that he spoke with defendant at police headquarters on the day of his arrest. He told defendant that Tyrone McChristian implicated him in the murder of Ross. Defendant then stated that A. D. McChristian shot Ross.

McWeeny further testified that defendant made the following statement: Defendant arranged to meet A. D. McChristian at the 79th Street billiard hall on October 26, 1983. When defendant arrived, Tyrone was there instead of A.D. Tyrone then told defendant the problem he and A.D. were having with Ross. McWeeny asked defendant whether he knew what was going on. Defendant answered, "Yeah, I figured it out. I knew what was going down." McWeeny then asked why A.D. wanted Ross dead. Defendant answered that Ross did something to someone that A.D. was protecting.

Defendant continued his statement to McWeeny. Tyrone told defendant that A.D. wanted him to get a gun. Tyrone and defendant then drove, using defendant's car, to a building that defendant entered and exited with a .32-caliber revolver. Tyrone then took defendant's car and directed him to a house where he met A.D., Ross, and a woman.

A.D. asked defendant, in private, whether he brought the gun; defendant gave it to A.D. while Ross was not looking. Defendant, A.D., and Ross eventually left the house, the woman stayed behind. With A.D. driving, the three went to a restaurant. After leaving the restaurant, A.D. instructed defendant, again in private, to drive to Altgeld Gardens. Ross sat in the back seat while A.D. sat in the front passenger seat, and defendant drove. As the car approached 103rd Street, A.D. turned and shot Ross in the head. A.D. then placed a coat over the victim's head in an attempt to prevent bloodstains from getting on the car. A.D. and defendant then drove to a secluded prai-

rie area behind Altgeld Gardens where they dumped the body. A.D. then drove back to the 79th Street billiard hall. There, defendant retrieved his car from Tyrone and said, "This day never existed."

On April 13, 1984, the jury found defendant guilty of murder, based on accountability, and the trial judge entered judgment thereon. At the close of a sentencing hearing on June 20, 1984, the trial judge sentenced defendant to the penitentiary for a term of natural life. Defendant appeals.

I

Defendant first contends that the trial judge erred in denying his motion to suppress the statements that he made to police on the day of his arrest. He argues (A) that the trial judge's ruling was against the manifest weight of the evidence, and (B) that the trial judge considered information outside of the record in denying the motion to suppress.

The trial judge convened a pretrial suppression hearing on February 23, 1984. At the hearing, defendant testified that Chicago police officers arrested him at 7 a.m. Later that day, while still in their custody, they took him to a remote place where they tortured him. While handcuffed with his hands behind his back, a police officer placed an unloaded shotgun in his mouth and asked him the whereabouts of A. D. McChristian. When he did not answer, the officer pulled the trigger. The officers next produced an electric cattle prod and applied it to his exposed reproductive organs. He remained silent. The officer then increased the voltage and repeated the procedure. He then told the officers anything they wanted to hear.

Defendant further testified that after driving to several locations, the officers took defendant to the police auto pound where he answered more questions. When defendant then refused to repeat his admissions to an assistant State's Attorney, the officers took the cattle prod from the glove compartment of their car and repeated its application to defendant's exposed reproductive organs. Defendant again agreed to tell them anything they wanted to hear. Detective McWeeny appeared and defendant made a statement to him. They returned to police headquarters where defendant made a statement to Assistant State's Attorney Henry Simmons in Detective McWeeny's presence.

On cross-examination, however, defendant admitted that he said nothing of the alleged torture to Assistant State's Attorney Simmons. Defendant went to the lockup after giving his statement; he did not tell anyone there that he needed medical treatment. Defendant also did not mention his alleged torture to the judge at his arraignment

the next morning. After arraignment, defendant was taken to Cook County jail where a paramedic examined him; he did not mention the alleged torture.

The State called as witnesses the police officers who arrested defendant, Detective McWeeny, and Assistant State's Attorney Simmons. The officers denied that they tortured defendant or coerced him in any way. The police officers essentially testified that after they arrested defendant he told them the whereabouts of A.D. and offered to take them there. Their search was unsuccessful. They next went to police headquarters where Detective McWeeny told defendant that Tyrone implicated him in the murder. Defendant then gave a statement and offered to show the officers where he and A.D. placed the body. Defendant then took the officers to the same place where they found the body.

The State's witnesses further testified that they next took defendant to the police auto pound where he identified the blue 1975 Buick that he drove on the day of the murder. They next went to another police station to confer with more police. After another unsuccessful search for A. D. McChristian, they returned to police headquarters.

At the station, Assistant State's Attorney Simmons, after advising defendant of his rights, heard defendant's statement in McWeeny's presence. Defendant later repeated his statement before a court reporter; he also read aloud his typed statement and signed it. Defendant did not assert his right to remain silent or to have an attorney present; he did not complain that the police tortured him.

At the close of the hearing, the trial judge found that the State's evidence outweighed and contradicted defendant's evidence and, accordingly, denied defendant's motion to suppress.

## A

■ Defendant first contends that the trial judge's denial of the motion to suppress was against the manifest weight of the evidence. An individual who is subjected to custodial police interrogation concerning matters that might tend to incriminate him is entitled to the procedural safeguards that the United States Supreme Court outlined in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The person interrogated may waive these rights, but a heavy burden rests on the State to show that he waived his constitutional rights knowingly and intelligently. (384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628.) We must, therefore, initially determine whether defendant knowingly, intelligently, and voluntarily waived these rights. *People v. Martin* (1984), 102 Ill. 2d 412, 426, 466

N.E.2d 228, 234.

Whether a defendant makes a statement voluntarily depends on the totality of the circumstances. The test is whether the defendant made the statement freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. In making its decision, the trial court need not be convinced beyond a reasonable doubt, and we will not disturb its findings unless they are against the manifest weight of the evidence. *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, 606, cited in *People v. Martin* (1984), 102 Ill. 2d 412, 426-27, 466 N.E.2d 228, 234.

■■ Applying these principles to the instant case, we will not disturb the trial judge's denial of defendant's motion to suppress. The trial judge observed the witnesses and reviewed the evidence. He found that no reason existed to disbelieve the State's evidence, which outweighed and contradicted the evidence of defendant. After reviewing the record, we cannot say that the trial judge's decision was against the manifest weight of the evidence.

## B

Defendant also contends that the trial judge considered information outside of the record in denying his motion to suppress. The record shows that while the trial judge reviewed the evidence, he stated:

> "Now, the defendant testified that at a time during the day that he was in the detective's car he was threatened for a second time with a cattle prod and that it was taken out of the glove compartment. The court has seen the cattle prods on our own farm and other farms but we have never seen one less than two feet long. A cattle prod that would fit into a glove compartment would be the size of a flashlight and it would not contain battery power sufficient to prod cattle."

■■ ■ When the trial court is the trier of the facts, a reviewing court presumes that the judge considered only admissible evidence and disregarded inadmissible evidence in reaching his conclusion. A trial judge's statement, in the record, that he had considered matters not in evidence necessarily rebuts this presumption. (*People v. Wallenberg* (1962), 24 Ill. 2d 350, 354, 181 N.E.2d 143, 145.) The deliberations of the trial judge are limited to the record made before him during the course of the trial. A determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence, constitutes a denial of due process of law. A convic-

tion resulting from such proceedings must, accordingly, be reversed and the cause remanded for a new trial. 24 Ill. 2d 350, 354, 181 N.E.2d 143, 145, relied upon in *People v. Harris* (1974), 57 Ill. 2d 228, 231-32, 314 N.E.2d 465, 466-67.

The State initially contends that defendant waived the issue by failing to object at trial and to include the alleged error in his post-trial motion. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091, 1093.) Supreme Court Rule 615(a), however, provides an exception to the rule of waiver where there has been "plain error." (87 Ill. 2d R. 615(a).) Under this rule, we may elect to consider errors that have not been properly preserved for review where the evidence at trial is closely balanced or where the errors were of such magnitude that a defendant was denied a fair trial. 88 Ill. 2d 245, 250-51, 430 N.E.2d 1091, 1093-94.

■■ The error that defendant alleges goes to his inherent and constitutional right that all proceedings against him shall be open and notorious, and in his presence. Any inquiry or any acquisition of information or evidence outside of open court and outside of the presence of the defendant is prejudicial error. (*People v. Rivers* (1951), 410 Ill. 410, 416, 102 N.E.2d 303, 306.) This court, as a result, has elected to review such alleged errors under Rule 615(a) (87 Ill. 2d R. 615(a)). *People v. Brantley* (1976), 43 Ill. App. 3d 616, 618, 357 N.E.2d 105, 107.

Defendant contends that the trial judge's knowledge of the size and power of cattle prods, which he stated on the record as having received from his farm and other farms, was outside of the record. Defendant further contends that the trial judge relied on this information in denying the motion to suppress. Defendant, therefore, believes that he should receive a new trial. The State, however, relying on *People v. Roti* (1971), 2 Ill. App. 3d 264, 276 N.E.2d 480, contends that the trial judge's reference was harmless because the record contains other competent evidence on defendant's credibility.

The State misreads *Roti*. In that case, the court held that the trial judge's reference to information outside of the record was not a factor in his decision. In *dicta* immediately following, the court noted that the record contained other competent evidence supporting the trial judge's decision. *People v. Roti* (1971), 2 Ill. App. 3d 264, 271, 276 N.E.2d 480, 485.

■■ We, as did the court in *Roti*, conclude that the trial judge's reference to cattle prods in the instant case was not a factor in his decision. The issue here is not the size and power of cattle prods, but, rather, whether the police coerced defendant in any way to extract his

statement. The trial judge's reference to cattle prods was *dictum*; it had no bearing on defendant's credibility or the weight of his evidence.

We previously held that the trial judge's denial of defendant's motion to suppress was not against the manifest weight of the evidence. Finding no other errors, we uphold his ruling.

## II

Defendant next contends that we should reverse his conviction because the State failed to disclose to the defense, during discovery, his admission to Detective McWeeny. The State initially contends that defendant waived this issue for review by neither objecting at trial nor raising the issue in his post-trial motion.

■ Contrary to the State's assertions, the record shows that defendant did object at trial to Detective McWeeny's testimony. The record also shows, however, that defendant did fail to raise the issue in his post-trial motion. Accordingly, we conclude that he has waived this issue for review. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091, 1093.) After reviewing the record, we further conclude that this issue does not warrant our consideration under the plain-error doctrine of Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)). *People v. Lucas* (1981), 88 Ill. 2d 245, 250-51, 430 N.E.2d 1091, 1093-94.

## III

Defendant next contends that the trial judge erred in refusing to give to the jury an instruction on (A) prior inconsistent statements and an instruction on (B) concealment of homicidal death.

## A

According to Detective McWeeny's testimony at trial, defendant admitted to McWeeny that he knew that A. D. McChristian planned to kill Darren Ross. McWeeny testified that defendant stated, "Yeah, I figured it out. I knew what was going down." McWeeny further testified that he did not include defendant's exact words in his police report, but, rather, a summary. As a result, defendant tendered the following instruction on prior inconsistent statements, which the trial judge refused:

"'The believability of a witness may be challenged by evidence that on some former occasion he [(made a statement) (acted in a manner)] that was not consistent with his testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony

you heard from the witness in this courtroom." Illinois Pattern Jury Instruction, Criminal, No. 3.11 (2d ed. 1981) (IPI Criminal 2d).

■ Evidence of a witness' prior inconsistent statements is admissible to impeach his or her credibility. Such evidence is not admitted as proof of the truth of the facts stated out of court, but to cast doubt on the testimony of the witness by showing his inconsistency, and an instruction to that effect should be given upon request. (*People v. Moses* (1957), 11 Ill. 2d 84, 87, 142 N.E.2d 1, 3.) Further, defendant is correct that a prior inconsistent statement encompasses omissions as well as affirmative statements. *People v. Smith* (1978), 67 Ill. App. 3d 672, 678, 385 N.E.2d 44, 49.

■ The function of instructions to a jury is to convey to the mind of the jury the correct principles applicable to the evidence that the parties submit to it, so that the jury may, by application of the proper legal principles to the facts, arrive at a correct conclusion according to the law and the evidence. A defendant has a right to a full statement of the law from the trial judge, and failure to give such a tendered full statement, when the jury consequently falls into error, is sufficient reason to justify a reversal. (*People v. Mitchell* (1975), 27 Ill. App. 3d 117, 121, 327 N.E.2d 157, 161.) However, a trial judge does not err in refusing a requested instruction that accurately states an applicable principle of law, if the judge gives another instruction that correctly and sufficiently covers that legal principle. *People v. Smith* (1978), 67 Ill. App. 3d 672, 678, 385 N.E.2d 44, 49.

■ Applying the above principles to the instant case, we conclude that other jury instructions correctly and sufficiently covered the applicable legal principles. Although prior inconsistent statements include omissions with affirmative statements, minor discrepancies and inconsistencies in testimony do not render the testimony unworthy of belief, but go only to its weight. (*People v. Smith* (1978), 67 Ill. App. 3d 672, 676, 385 N.E.2d 44, 48, quoting *People v. Henderson* (1976), 36 Ill. App. 3d 355, 367, 344 N.E.2d 239, 249.) Further, the trial judge gave the jury the following instruction, taken from I.P.I. Criminal 2d No. 1.02:

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, an interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

The jury, therefore, received the correct principle of law applicable to the evidence before it. We find no error in the trial judge's refusal to instruct the jury on prior inconsistent statements.

### B

■■■ Defendant contends that the trial judge erred in refusing to instruct the jury on the offense of concealment of a homicidal death. Defendant relies on *People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993, where the State charged the defendants with residential burglary with intent to commit theft, and where the trial judge refused to instruct the jury on simple theft, a less serious offense. The supreme court held that under the facts of that case, where the charging instrument charged the specific intent to commit theft and the evidence proved the offense of theft, the trial judge's refusal to give the tendered theft instruction was error. 104 Ill. 2d 96, 103, 470 N.E.2d 993, 996.

*Dace* is the latest in the evolving doctrine whereby a defendant is entitled, under certain circumstances, to have the question of his or her guilt on an uncharged lesser offense submitted to the jury. (*People v. Yager* (1984), 128 Ill. App. 3d 702, 703, 471 N.E.2d 244, 245.) Before *Dace*, the test that our supreme court enunciated in *People v. Cramer* (1981), 85 Ill. 2d 92, 97, 421 N.E.2d 189, 191, was whether the uncharged offense was included in the charged offense as it was set forth in the charging instrument. (*People v. Yager* (1984), 128 Ill. App. 3d 702, 704, 471 N.E.2d 244, 245, citing *People v. Mays* (1982), 91 Ill. 2d 251, 255, 437 N.E.2d 633, 635.) The *Dace* court explicitly limited its holding to its facts (*People v. Dace* (1984), 104 Ill. 2d 96, 103, 470 N.E.2d 993, 996) and, thus, did not alter the rule in *Cramer*.

Applying the above principles to the instant case, we find no error in the trial judge's refusal to instruct the jury on the offense of concealment of homicidal death. The record shows that defendant's murder indictment charged that he, without lawful justification, intentionally and knowingly shot and killed Darren Ross, or, alternatively, knowing that such shooting created a strong probability of death or great bodily harm, closely following the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2).) Concealment of a homicidal death, however, requires (1) knowledge that a homicidal death has occurred and (2) some affirmative act of concealment by the defendant. *People v. Mueller* (1985), 130 Ill. App. 3d 385, 388, 474 N.E.2d 434, 436, *aff'd* (1985), 109 Ill. 2d 378, 488 N.E.2d 523.

None of the elements of murder with which the State charged defendant include the uncharged offense of concealment of a homici-

dal death. Each offense requires different acts as well as different states of mind; each requires proof of facts that the other does not. (*People v. Mueller* (1985), 109 Ill. 2d 378, 388, 488 N.E.2d 523, 527-28.) We, therefore, uphold the ruling of the trial judge.

## IV

■■■ Defendant next contends that we should reverse his conviction because the State (A) referred to his street-gang affiliation throughout the trial and (B) referred to his admissions as a confession during closing argument.

Defendant failed to object to the four occasions during trial where the State referred to his street-gang affiliation and also failed to raise the issue in his post-trial motion. Defendant additionally failed to include in his post-trial motion the issue of the State's reference to his admission as a confession during closing argument. Accordingly, we conclude that he has waived these issues for review. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091, 1093.) After reviewing the record, we further conclude that these issues do not warrant our consideration under the plain-error doctrine of Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)). *People v. Lucas* (1981), 88 Ill. 2d 245, 250-51, 430 N.E.2d 1091, 1093-94.

## V

■■■ Defendant next contends that we should reverse his sentence of natural life under section 5—8—1(a)(1)(c) of the Unified Code of Corrections. That section provides:

> "(a) A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
>
> (1) for murder *** (c) if the defendant has previously been convicted of murder under any state or federal law or is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural life imprisonment."

Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c).

Defendant argues that the statute violates article I, section 11, of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, sec. 11.) Our supreme court rejected this argument in *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059. We are, of course, bound by its decision. *People v. Nurse* (1985), 131 Ill. App. 3d 590, 594, 475 N.E.2d 1000, 1004.

Defendant argues additionally that the natural life statute violates the due process and equal protection clauses of the Illinois and United States constitutions, and also that rules of statutory construction require that he be sentenced under a more lenient section of the statute. We recently rejected these arguments in *People v. Boswell* (1985), 132 Ill. App. 3d 52, 60, 476 N.E.2d 1154, 1160, *rev'd on other grounds* (1986), 111 Ill. 2d 571, we continue to adhere to its reasoning. (*People v. Denson* (1985), 139 Ill. App. 3d 914, 926, 487 N.E.2d 777, 785.) We, therefore, uphold defendant's sentence to the penitentiary for a term of natural life.

## VI

■■ Defendant lastly contends that he did not receive a fair trial because the State used its peremptory challenges during *voir dire* to exclude black venirepersons from the jury.

The record shows that during *voir dire*, after the State exercised its sixth peremptory challenge, defense counsel requested a side bar where the attorneys and the trial judge held the following conversation:

"MR. HIMEL [defense counsel]: I may be wrong but I think every challenge used by the State was a challenge against a black person. I feel that at this time the State is systematically excluding black people from jury selection.

THE COURT: State?

MR. QUINN [Assistant State's Attorney]: Judge, you are aware of a number of Supreme Court cases. That is not an issue in Illinois. I ask that we go back to the voir dire.

THE COURT: You ask what?

MR. QUINN: We ask [that] we go back to the voir dire. Mr. Himel has raised a non-issue. ***.
 * * *

THE COURT: Motion denied."

The State correctly argued at defendant's trial that the issue of a prosecutor's misuse of peremptory challenges to exclude black persons from a jury was not an issue in Illinois. At the time of defendant's trial, the decision of *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, and its Illinois offspring was the law of the land.

In *Swain v. Alabama* the United States Supreme Court held that a prosecutor's misuse of peremptory challenges to exclude black persons from a jury in a criminal trial solely on account of their race did not deny a defendant equal protection of the laws as guaranteed by

the fourteenth amendment to the United States Constitution. The court held, however, that a defendant would prevail on such a claim if he could show that a prosecutor in a county was systematically excluding persons from juries for racially motivated reasons "in case after case." (*Swain v. Alabama* (1965), 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) The Illinois Supreme Court has repeatedly declared the principles articulated in *Swain* to be controlling in Illinois. *People v. Lyles* (1985), 106 Ill. 2d 373, 392-95, 478 N.E.2d 291, 289-300; *People v. Williams* (1983), 97 Ill. 2d 252, 273-80, 454 N.E.2d 220, 229-33.

Scholars, attorneys, and the general public criticized the rule of *Swain* because it (1) defeated the goal of a fair jury that the sixth amendment to the United States Constitution expresses, (2) contained a standard that was unfair to defendants and was almost unattainable, and (3) destroyed the appearance of justice in our courtrooms. *People v. Dotson* (1986), 143 Ill. App. 3d 135, 149, 492 N.E.2d 903, 912 (Johnson, J., concurring); *People v. Loggins* (1985), 134 Ill. App. 3d 684, 695-96, 480 N.E.2d 1293, 1301 (Johnson, J., concurring); *People v. Lavinder* (1981), 102 Ill. App. 3d 662, 671, 430 N.E.2d 243, 248 (Johnson, J., dissenting).

After 21 years of defendants' being denied their constitutional rights, the United States Supreme Court finally overruled *Swain*'s requirement of showing a systematic exclusion from juries in case after case. In *Batson v. Kentucky* (1986), 476 U.S. ___, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the United States Supreme Court held that a defendant may establish a *prima facie* case of purposeful discrimination in the *voir dire* solely on evidence of the prosecutor's misuse of peremptory challenges at that particular trial. A defendant must show that (1) he or she is a member of a cognizable racial group, the members of which have been excluded from the jury as a result of the prosecutor's misuse of peremptory challenges, and (2) that all of the circumstances raise an inference that the prosecutor used the peremptory challenges to exclude venirepersons from the jury on racial grounds. Once a defendant establishes a *prima facie* case of purposeful discrimination, the burden shifts to the prosecutor to come forward with a neutral explanation for excluding members of the defendant's racial group. 476 U.S. ___, ___, 90 L. Ed. 2d 69, 87-88, 106 S. Ct. 1712, 1722-23.

The Supreme Court decided *Batson* after defendant's trial but during our direct review. We must, therefore, now determine whether *Batson* applied retroactively to the instant case. With guidance from a recent decision of this court, we conclude that *Batson* applies to the

instant case.

The First Division of this court recently addressed this issue in *People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816. After a thorough analysis, the *Johnson* court held that *Batson* applied to their case.

The *Johnson* court first observed that its case was on direct review at the time *Batson* was decided. The court then noted that the United States Supreme Court has held that a new decision would be retroactive to cases still pending on direct review, but nonretroactive to convictions that had become final before the new decision was handed down. *People v. Johnson* (1986), 148 Ill. App. 3d 163, 175-76, 498 N.E.2d 816, 824, citing *Tehan v. United States ex rel. Shott* (1966), 382 U.S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459; *Linkletter v. Walker* (1965), 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731.

The *Johnson* court next applied the factors of retroactivity in criminal cases to the facts before it: (1) the purpose to be served by the new standards; (2) the extent of reliance on the old standards, and (3) the effect on the administration of justice of a retroactive application of the new standards. *People v. Johnson* (1986), 148 Ill. App. 3d 163, 179, 498 N.E.2d 816, 826, citing *Johnson v. New Jersey* (1966), 384 U.S. 719, 726-27, 16 L. Ed. 2d 882, 888, 86 S. Ct. 1772, 1777.

Applying the first factor, the *Johnson* court found that the rule of *Batson* was not a clear break with the past, but, rather, an extension of the principles explained in *Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L. Ed. 664, 10 Otto 303. (*People v. Johnson* (1986), 148 Ill. App. 3d 163, 177, 498 N.E.2d 816, 825-26.) The court further found that the preservation of the fundamental rights at issue there overrode any concern for administrative difficulties, being the third factor. 148 Ill. App. 3d 163, 177-78, 498 N.E.2d 816, 826-27.

Regarding the second factor, the court found that the prosecutorial misuse of peremptory challenges was not a justified reliance sufficient to thwart *Batson*'s retroactivity. The court found that *Batson* now simply forces a prosecutor to "articulate the nondiscriminatory reasons it has always had the duty to have." *People v. Johnson* (1986), 148 Ill. App. 3d 163, 180, 498 N.E.2d 816, 827.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed, except as to the court's ruling on the issue of the State's misuse of its peremptory challenges. Based on *People v. Johnson*, "we remand the case to the circuit court for a hearing on the present record and any additional record on that issue the parties decide to make for the purpose of determining whether, pursuant to *Batson*, the prosecutor purposefully discriminated against blacks in

executing [his] peremptory challenges. In the event the circuit court finds that the prosecutor did not purposefully discriminate, the court is directed to confirm the judgment and sentence. If the court finds that the prosecutor did purposefully discriminate, the court is directed to order a new trial." 148 Ill. App. 3d 163, 180, 498 N.E.2d 816, 827.

Affirmed in part and remanded with directions.

JIGANTI and McMORROW, JJ., concur.