THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. A. R. ROOSEVELTAUSE, Defendant-Appellant.

First District (4th Division)   No. 85—2596

Opinion filed May 14, 1987.

Paul P. Biebel, Acting Public Defender, of Chicago (Bruce C. Landrum and James H. Reddy, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Kevin J. Moore, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, A. R. Rooseveltause, was convicted of rape (Ill. Rev. Stat. 1983, ch. 38, par. 11—1) following a jury trial in the circuit court of Cook County. The trial judge sentenced defendant to the penitentiary for a term of 30 years. On appeal, defendant contends that (1) the State failed to prove him guilty beyond a reasonable doubt of the crime of rape, (2) his prison sentence of 30 years was excessive, and (3) the State used its peremptory challenges during *voir dire* to exclude black venirepersons from the jury.

We affirm in part and remand with directions.

Since defendant contends that he was not proved guilty beyond a reasonable doubt, we must recite the testimony at trial in detail. The testimony adduced the following facts. On the night of March 5, 1984, the victim was a patient at Oak Forest Hospital, located at 15900 South Cicero Avenue, in Oak Forest, Illinois. She had been a patient at the hospital for five years. She suffered from an aneurysm in her brain, which was a weakening in one of the blood vessels in her brain; the

vessel bled into her brain and became infected. As a result, she was, and still is, semi-comatose and, at times, completely comatose. On that night, she was unresponsive and unable to communicate. She was paralyzed and unable to make any voluntary movements or responses.

On the night of March 5, 1984, defendant was also a patient at Oak Forest Hospital. He had been a patient there for approximately four to five months as a result of a stroke. Ruthie Merrill, a nursing attendant at the hospital, was working the 11 p.m. to 7 a.m. shift at the hospital that night. At approximately 10:50 p.m., on her way to the staff meeting for the shift, she saw defendant sitting in a wheelchair in front of the door to the victim's room.

The staff meeting lasted approximately five minutes. Merrill and Kathleen McFadden, another nursing attendant, proceeded to their work area. Merrill noticed an empty bed as they passed the victim's room. Because no one notified them of any reason why the bed would be vacant, they entered the victim's room to investigate. Defendant was no longer sitting in front of the door.

Merrill and McFadden testified that upon entering the victim's room, they noticed that the curtain around the victim's bed was closed, although normally it was not. They further testified that while Merrill investigated the empty bed, McFadden pulled back the curtain. Merrill and McFadden did not then see the victim, but rather another head. McFadden then pulled back the sheet covering the person. The attendants then recognized defendant, lying on the victim, with his pants down and moving his buttocks in an "up and down" manner. The victim's gown was pulled up around her neck and part of the gown was in her mouth. The plastic diaper that the victim wore, due to her incontinence, was torn on each side, exposing her.

McFadden left the room to seek help. Merrill then asked defendant what he was doing, reached through the bed rails, and pushed defendant up 7 or 8 inches. Merrill testified that she saw 1½ to 2 inches of defendant's sex organ and that it was erect and in the sex organ of the victim. Defendant then rolled back on the victim and continued the attack. Merrill testified that she did not wrestle with defendant for fear of further harming the victim.

Less than a minute later, nursing attendants Parker and Brooks entered the room. Parker ordered defendant to get off of the victim and tried unsuccessfully to push defendant away. Parker testified that she saw defendant's sex organ and that it was flaccid and touching the outside of the victim. Defendant ignored Parker's command and continued the attack.

Juanita Love, L.P.N., and Lorena Anastacio, R.N., next entered

the room. Anastacio ordered defendant three times to get out of the bed. Anastacio testified that after her third order, defendant stared at her and then continued the attack. Anastacio then told defendant that she was going to call security, referring to the hospital's public safety staff. Anastacio then left the room to make the call. The other medical staff members left the room with her, but Merrill and Love stood by the door and watched defendant.

Merrill then testified that after the nurses left the room, she saw defendant sit on his knees, pull up his pants, raise one leg over the bed rail and then the other. Standing, he buttoned and zipped his pants, buttoned his shirt, sat in his wheelchair, and rolled to the door. Security personnel arrived approximately 30 seconds later, finding defendant outside of the victim's room, sitting in his wheelchair.

The State charged defendant by information with rape. At the close of trial, the trial judge instructed the jury also on battery at defendant's request. On July 24, 1985, the jury found defendant guilty of rape and the trial judge entered judgment thereon. At the close of a sentencing hearing on August 28, 1985, the trial judge sentenced defendant to the penitentiary for a term of 30 years. Defendant appeals.

I

Defendant first claims that the State did not prove beyond a reasonable doubt his guilt of the crime of rape. He admits that the victim was incapable of consenting to an act of intercourse. (See Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a).) Rather, defendant contends that the State failed to prove beyond a reasonable doubt that his sex organ penetrated that of the victim, as required by section 11—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 11—1(b)).

Defendant contends that the evidence adduced at trial was insufficient and conflicting and failed to remove all reasonable doubt as to whether his sex organ penetrated that of the victim. First, only Merrill testified that she saw defendant penetrate the victim, out of a total of six medical staff members in the room. Further, Parker testified, in contradiction to Merrill, that defendant's sex organ was flaccid and touching the outside of the victim.

Defendant additionally points to the testimony of James Owczarski, a lieutenant in the public safety department of the hospital, to discredit Merrill's testimony. Officer Owczarski testified that he investigated the attack, took statements from the medical staff members in the room, and included them in his report. He testified that Merrill told him that she, not McFadden, pulled back the curtain around the victim's bed and

that McFadden stayed in the room long enough to help her in her attempt to push defendant off of the victim. Further, McFadden also told Officer Owczarski that Merrill, not she, pulled back the curtain. These statements contradicted what Merrill and McFadden testified at trial. Defendant now argues that "the unusual and shocking sight of the defendant in bed with [the victim] excited Ruthie Merrill to the point where her ability to perceive events and facts became patently distorted," and further, her "perception of the occurrence must be deemed suspect and unreliable."

Officer Owczarski additionally testified that Anastacio told him that defendant was not moving while lying on the victim. McFadden told him also that defendant's pants were not lowered but that the front of them was open. Defendant labels this evidence insufficient and conflicting and contends that it failed to remove all reasonable doubt as to penetration.

It is the duty of the jury to weigh the evidence and determine the credibility of the witnesses. (*People v. Stepney* (1977), 46 Ill. App. 3d 328, 330, 360 N.E.2d 1206, 1208.) A reviewing court will not reverse a jury finding unless it is palpably against the weight of the evidence or so unsatisfactory as to raise a reasonable doubt of guilt. Further, "a positive identification by even one witness, who had a good opportunity to observe an accused in terms of length of time, proximity and lighting conditions, is sufficient to sustain a verdict of guilty." *People v. Lamacki* (1984), 121 Ill. App. 3d 403, 417-18, 459 N.E.2d 1142, 1152, quoting *People v. Stepney* (1977), 46 Ill. App. 3d 328, 330, 360 N.E.2d 1206, 1208.

Defendant's argument goes to the weight and sufficiency of the evidence. Merrill testified that she saw defendant penetrate the victim. The jury considered the weight of this testimony with the conflicting testimony of the other witnesses; they found defendant guilty. We cannot and will not replace their assessment of the evidence with ours. Further, after reviewing the record, we cannot say that the evidence was so palpably against the conviction, or so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt as to defendant's guilt. We hold, therefore, that the State met its burden of proving defendant guilty beyond a reasonable doubt of the crime of rape.

## II

Defendant next contends that his prison sentence of 30 years was excessive. He cites several other rape cases with egregious facts, where those defendants received shorter sentences.

Supreme Court Rule 615(b)(4) authorizes this court to reduce a

criminal sentence. (87 Ill. 2d R. 615(b)(4).) However, a sentencing decision is a matter of judicial discretion and, so long as the sentence is within the statutory limits, we hesitate to exercise our power to reduce it absent a finding that the court abused that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) The trial judge is normally in a better position to determine punishment than a reviewing court. A trial judge properly bases a sentence on the particular circumstances of each individual case, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. The trial judge has the superior opportunity to consider these factors; we have before us only the cold record. 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

Further, "[a] rebuttable presumption arises that the sentence imposed was proper and is only overcome by an affirmative showing that the sentence imposed varies greatly from the purposes and spirit of the law or is manifestly violative of constitutional guidelines." *People v. Jenkins* (1984), 128 Ill. App. 3d 853, 857, 471 N.E.2d 647, 650, citing *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 775-76, 445 N.E.2d 1213, 1222.

■ After reviewing the record in the instant case, we cannot say that the trial judge abused his discretion. The trial judge sentenced defendant to 30 years in the penitentiary. This is within the statutory limits. (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1(c), 1005—8—1(a)(3).) The record shows that the trial judge considered many different factors before imposing sentence. We hold that defendant's prison sentence of 30 years was not excessive.

### III

■ Defendant lastly contends that he did not receive a fair trial because the State used its peremptory challenges during *voir dire* to exclude black venirepersons from the jury.

The record shows that during *voir dire* defense counsel requested a sidebar, where the attorneys and the trial judge held the following conversation:

"MR. DOHM [Defense counsel]: Your Honor, we would ask for a mistrial at this time. The State is obviously throwing black jurors off, without stating a reason there for [*sic*], and is just, indiscriminately, trying to create an all white jury, which we believe will be the sole purpose of prejudicing the defendant, your Honor.

MR. PERRY [Assistant State's Attorney]: That's certainly not our intention Judge. We have used our peremptory chal-

lenges as we see fit, and I don't see any reason why there should be a mistrial at this point. There has been two exclusions of two people who are 20 years of age.

THE COURT: Well, you know the present state of law is such and we are all familiar with it, that a peremptory challenge is still a peremptory challenge within certain limitations. Based upon a bare allegation of systematic exclusion of jurors and without establishing anything to substantiate that claim, the motion for a mistrial is respectfully denied.

MR. DOHM: Your Honor, we would ask the Court to ask the State's Attorney the reason, for the record, \*\*\* of why he is excluding these two black jurors. They have no other different backgrounds than the other two people on the jury and we see no reason, other than they are black as the reason that they're being excluded.

MR. PERRY: Judge, I think the law, at this point, is clearly that we have the right to make peremptory challenges for whatever reason we feel is necessary, and I don't think there is any reason for us to articulate those reasons at this point.

THE COURT: He asked me to ask you your reason. I respectfully decline to ask your reasons."

A very short time later, the State excused another venireperson, which resulted in another sidebar:

"MR. DOHM: Again, we renew our motion again for mistrial based on exclusion of black jurors \*\*\* and ask the Court again to ask the State's Attorney, for the record, the reason for excluding, exercising peremptory challenges on black jurors.

THE COURT: Do you even want to respond, gentlemen?

MR. PERRY: No.

THE COURT: I mean with respect to [the venireperson], it was a close call, in the Court's opinion, whether it would have been for cause. Her credibility was nonexistent, as far as this Court is concerned \*\*\*. I am not going to ask the State for its reason for the challenge. Motion for mistrial denied."

In *People v. Cannon* (1986), 150 Ill. App. 3d 1009, 502 N.E.2d 345, we recognized that in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, the United States Supreme Court held that a prosecutor's misuse of peremptory challenges to exclude black persons from a jury in a criminal trial solely on account of their race did not deny a defendant equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution. The *Swain* court held, however, that a defendant would prevail on such a claim if

he could show that a prosecutor in a county was systematically excluding persons from juries for racially motivated reasons "in case after case." 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837; *People v. Cannon* (1986), 150 Ill. App. 3d 1009, 1022-23, 502 N.E.2d 345, 353.

We further recognized in *Cannon* that after 21 years of defendants being denied their constitutional rights, the United States Supreme Court finally overruled *Swain*'s requirement of showing a systematic exclusion from juries in case after case. In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the court held that a defendant may establish a *prima facie* case of purposeful discrimination in the *voir dire* solely on evidence of the prosecutor's misuse of peremptory challenges at that particular trial. "A defendant must show that (1) he or she is a member of a cognizable racial group, the members of which have been excluded from the jury as a result of the prosecutor's misuse of peremptory challenges, and (2) that all of the circumstances raise an inference that the prosecutor used the peremptory challenges to exclude venirepersons from the jury on racial grounds. Once a defendant establishes a *prima facie* case of purposeful discrimination, the burden shifts to the prosecutor to come forward with a neutral explanation for excluding members of the defendant's racial group. [Citation.]" *People v. Cannon* (1986), 150 Ill. App. 3d 1009, 1022-23, 502 N.E.2d 345, 353.

We conclude that the rule of *Batson* applies to the case at bar. We hold, therefore, that defendant is entitled to a *Batson* hearing in the trial court, where the prosecutor may offer race-neutral explanations for his peremptory challenges.

The State offers several reasons why *Batson* should not apply here. The State first contends that since the Supreme Court decided *Batson* after defendant's trial, we cannot apply it retroactively to this cause. *Batson* was decided subsequent to defendant's trial, but this cause was still before us on direct review. It is no longer an issue that *Batson* applies retroactively to cases pending on direct review. (*Griffith v. Kentucky* (1987), 479 U.S. ___, ___, 93 L. Ed. 2d 649, 654, 107 S. Ct. 708, 710.) We note that this court reached the same conclusion before the United States Supreme Court handed down *Griffith*. *People v. Johnson* (1986), 148 Ill. App. 3d 163, 178, 498 N.E.2d 816, 826, relied upon in *People v. Cannon* (1986), 150 Ill. App. 3d 1009, 1024, 502 N.E.2d 345, 354.

The State next claims that the record does not indicate the final composition of the jury. Thus, the State contends, we cannot review a *voir dire* where the defendant has failed to create a record.

■ The State misreads the record. The record shows that during the sentencing hearing, the trial judge gave defendant an opportunity to supplement his written post-trial motion with oral argument. Discussing the peremptory challenge issue, defense counsel noted that an all-white jury was selected. The record further shows that the prosecutor, who was the same prosecutor throughout the *voir dire* and trial, in response to defendant's argument, acknowledged that it was an all-white jury, but invoked the rule of *Swain* to justify his use of the peremptories. Thus, both sides agreed at trial that defendant was tried before an all-white jury. We further note that it is not necessary under *Batson* for a prosecutor to remove *all* of the members of a defendant's racial group. Rather, a trial judge must consider all of the relevant circumstances surrounding the *voir dire*. *Batson v. Kentucky* (1986), 476 U.S. 79, 96-97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723. See also *McCray v. Abrams* (2nd Cir. 1984), 750 F.2d 1113, 1133.

The State lastly claims that it did provide the trial judge with a race-neutral explanation for its peremptory challenges, even though *Swain* did not require it to do so. We earlier quoted from the record the pertinent portions of the *voir dire*. Those excerpts show both that the State refused to volunteer an explanation and that the trial judge refused to ask the State for one. Further, the purported explanation that the State claims it gave applied only to the first challenge earlier quoted. The prosecutor said nothing during the second challenge. After reviewing the *voir dire*, we hold that *Batson* applies to the instant case and that defendant is entitled to a *Batson* hearing where the prosecutor may offer race-neutral explanations for his peremptory challenges.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed, except as to the court's ruling on the issue of the State's misuse of its peremptory challenges. Based on *People v. Johnson*, "we remand the case to the circuit court for a hearing on the present record and any additional record on that issue the parties decide to make for the purpose of determining whether, pursuant to *Batson*, the prosecutor purposefully discriminated against blacks in executing [his] peremptory challenges. In the event the circuit court finds that the prosecutor did not purposefully discriminate, the court is directed to confirm the judgment and sentence. If the court finds that the prosecutor did purposefully discriminate, the court is directed to order a new trial." *People v. Johnson* (1986), 148 Ill. App. 3d 163, 180, 498 N.E.2d 816, 827.

Affirmed in part and remanded with directions.

McMORROW, P.J., and JIGANTI, J., concur.