THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNY LARRY, Defendant-Appellant.

First District (5th Division)   No. 1—88—3436

Opinion filed August 16, 1991.

---

*Justice White concurred with this opinion prior to his retirement.

James H. Reddy, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael M. O'Brien, and Robin M. Bright, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Johnny Larry was convicted of unlawful use of a weapon by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1(a)), and following a jury trial, judgment was entered on the guilty verdict. Larry was sentenced to serve five years in the Illinois Department of Corrections. Larry appeals his conviction, alleging that: (1) he was deprived of his sixth amendment confrontation rights by the State's references to hearsay statements made by an unavailable witness; (2) that he was denied a fair trial by the State's improper remarks in summation; (3) that the trial judge erred in refusing to charge the jury that possession is a voluntary act; and (4) that the trial judge erred in refusing to charge the jury as to impeachment by prior inconsistent statements.

At trial, Officer Rodriguez testified that at approximately 1:15 a.m. on May 30, 1988, he was in his squad car with Officer Luera at 15th and Homan Streets in Chicago when the officers observed defendant's vehicle with its headlights off stopped at a stop sign at 15th Street. As defendant proceeded through the intersection, the officers followed the defendant, activating the squad car's security system. Defendant curbed his vehicle approximately one half block after the officers activated their security equipment.

The officers approached defendant and asked whether he was aware that his headlights were off. Defendant responded that he was unsure, and he then turned on the headlights. Officer Rodriguez then asked defendant if he had a driver's license, and defendant stated that he did not know whether he had the license with him. As defendant was looking for his license, Officer Rodriguez asked him to step out of the vehicle. Defendant complied with the officer's request, and Officer Luera then looked into defendant's car. He observed the handle of a gun protruding from underneath the right side of the mat on the driver's side of the hump of the car. He recovered the revolver and placed defendant under arrest.

Defendant testified that during the late evening hours of May 29, 1988, he was at Douglas Park at Kedzie and Douglas Streets in Chicago having a picnic with friends and his daughter. At approximately 1 a.m. on May 30, 1988, he borrowed the car of his friend, Debra Johnson, to take his daughter home. He testified that his headlights were on.

Defendant claimed that he first noticed a police car behind him traveling westbound on 16th and Sawyer Streets. He entered 16th and Homan and went to his house at 1517 South Homan. The police followed defendant, and when defendant parked his car at 1521 South

Homan, the police parked three or four cars behind defendant's car. Defendant took his daughter into the house, and when he returned to his car, the two detectives were still in their car with the lights off. With his vehicle headlights on, defendant turned onto 15th Street and headed toward Kedzie. He noticed that the officers' spotlight was on his car and he stopped his car. Both officers exited the squad car, and Officer Rodriguez approached him and told him to get out of his car. Defendant complied. He testified that he did not remain in his car to look for his driver's license for he did not have one, and he informed Officer Rodriguez of that fact. Officer Rodriguez did not mention to defendant that his lights were off. Officer Luera went to the car and searched it. When Officer Luera came back, he did not have his gun with him and said something to Officer Rodriguez which defendant did not hear. Defendant stated that he did not know the gun was in the car and that the first time he saw the gun was at the police station.

Defendant's first contention on appeal is that his sixth amendment confrontation rights were violated by the prosecutor's repeated references to hearsay statements of Debra Johnson, the owner of the car in which the gun was found. Although Debra Johnson did not testify at trial, the prosecution used the following methods to convey to the jury the substance of Debra Johnson's out-of-court statements. During direct examination of Officer Rodriguez, the prosecution asked the following questions:

"Q. By the way, Officer, in terms of this follow up investigation, did you determine that the car was owned by a woman?

A. Yes.

Q. Her name was Debra Johnson?

Q. You spoke with Debra Johnson that particular night, didn't you?

A. Yes.

Q. Spoke to her at the 10th District police station?

A. In the lobby at the 10th District, yes.

Q. What if anything did she say?

MR. KLOAK: Objection, hearsay.

THE COURT: Sustained.

MR. CUOMO: Q. Did she say anything about the gun?

MR. KLOAK: Objection, hearsay, beyond the scope.

THE COURT: I don't know that. The objection will be sustained."

Despite the trial court's ruling, the prosecutor again brought up the subject of Debra Johnson's statements during cross-examination of

Johnny Larry. After establishing that Debra Johnson had been brought into the same interrogation room as Larry, the prosecutor asked:

"Q. Asked [Debra] questions about the ownership of the car, didn't they?

A. Yes.

Q. Said she owned the car, right.

MR. KLOAK: I object, hearsay.

THE COURT: Pose another question. Sustained."

After a side bar in which the trial court explicitly ruled that Debra Johnson's out-of-court statements were inadmissible hearsay, the prosecutor again asked, "They talked to her about the ownership of the car, correct?" After Larry responded, "Yes," the prosecutor asked, "What else happened when she was there?" After an objection to this question had been sustained, the prosecutor asked, "They did not arrest Debbie Johnson did they, for possession of a gun that particular night?" After a fifth objection on hearsay grounds had been sustained, the prosecutor elicited from Larry the fact that Debra Johnson was not in the paddy wagon which brought him to the station house. The prosecutor then asked: "It's because she wasn't under arrest, Right?" A sixth objection to this question was then sustained.

Despite these repeated rulings, the prosecutor during summation underlined the significance of Debra Johnson's out-of-court statements by stating:

"They got the guy in custody with the gun. They talk to her and asked about the ownership of the car and let her go."

Likewise, in rebuttal, the prosecutor stated:

"Debbie Johnson who went to the police station and was given her car keys, and then went home that night because it wasn't her gun. It was his gun."

We agree with the defendant that the prosecutor's repetition of the same basic question, not once, but six times, was egregious. The cumulative effect of these repeated questions was to inform the jury that Debra Johnson had admitted owning the car, but denied possession of the gun. The fact that the trial court attempted to curb this misconduct by correctly sustaining objections to the prosecutor's questions was insufficient to shield the jury from the implications of the questions.

■ If counsel timely objects at trial to improper interrogation or to an improper remark by counsel to the jury, the court can usually correct the error by sustaining the objection or instructing the jury to disregard the answer or remark. (*People v. Carlson* (1980), 79 Ill. 2d

564, 404 N.E.2d 233.) It is, however, improper for a prosecutor to persist in asking the same question after receiving an adverse ruling on the question by the trial court. (*People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351 N.E.2d 402.) Where, as here, prosecutors defy the trial court's rulings by repeating the same questions after objections have been sustained, the court's rulings can have no salutary effect. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432.) "Driving a nail into a board and then pulling the nail out does not remove the hole." (*People v. Cepek* (1934), 357 Ill. 560, 192 N.E. 573.) In fact, the prosecutor's repetition of objectionable questions served to increase the prejudice to Johnny Larry by suggesting to the jury that defense counsel was attempting to prevent them from hearing pertinent evidence. In *Hovanec*, where the prosecutor asked about inadmissible evidence five times, rather than six, the court stated:

> "The prosecutor should have known the question was objectionable *** the first time. However, the more reprehensible conduct was the persistent asking of the question after an objection to it had been sustained. [Citation.] There can be little doubt that the prosecutor was *** attempting to make it appear to the jury that defendant was trying to keep unfavorable evidence from them." *Hovanec*, 40 Ill. App. 3d at 18.

The prosecutor's conduct in the instant case was even more egregious than that in *Hovanec*, since here, not only did the prosecutor ask questions concerning Debra Johnson's out-of-court statement six times, but the prosecutor also compounded the error by his comments in summation. Telling the jury that the officers had asked Debra Johnson about the ownership of the car and then let her go, especially after his series of objectionable questions, implied that she denied ownership of the gun. But for the prosecution's insinuations that Debra Johnson denied ownership of the gun, the jury may have concluded that the prosecution had failed to establish beyond a reasonable doubt that the gun found in Debra Johnson's car belonged not to Debra Johnson, but to Johnny Larry. For this reason, Johnny Larry's conviction is reversed, and the cause remanded for a new trial.

Defendant next maintains that he was denied a fair trial due to the prosecutor's comments during closing argument which misrepresented defense counsel's argument and told the jury that he was accusing the police officers of planting the gun in Debra Johnson's car. During his closing remarks, the prosecutor stated:

> "Are they [the police officers] stalking [the defendant] and turning off their headlights and then following him again and planting a gun in his car? That is ludicrous. That is ridiculous.

There's enough crime out there in the streets. These two officers don't have to go around there planting a gun in a guy's car especially that late at night.

\* \* \*

Ladies and gentleman, when you consider the evidence in this case, I want you to analyze what you heard from the officers. Is this the type of case where officers are planting a gun. Is this someone creating a case? I submit to you, obviously not. \*\*\* [T]he defendant will have you believe that they planted the gun, didn't have the gun registered, carried it around with them to plant it."

In response, defense counsel insisted that defendant was not saying that the police planted the gun. Instead, defense counsel asserted that when defendant borrowed Johnson's car, he was simply unaware that the gun was in the car. The prosecutor, nonetheless, returned to the planted-gun argument in his rebuttal.

A prosecutor is allowed a great deal of latitude in making closing argument, and the trial court's determination of the propriety of the closing argument will generally be followed absent a clear abuse of discretion. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) The prosecutor may comment on the evidence and all legitimate inferences deducible from the evidence, even if unfavorable to the defendant. *Weatherspoon*, 63 Ill. App. 3d at 322.

■ A review of the record indicates that the prosecutor's remarks on the planted-gun theory were justified based upon the evidence. In his opening statement, defense counsel stated that the evidence would show that the officers followed defendant to his home and again when defendant went to return the car to its owner, and that after searching the vehicle and finding nothing, the shorter officer went to the taller officer and whispered to him, whereupon the taller officer recovered a gun from the car. Furthermore, when questioning Officer Rodriguez, defense counsel elicited statements as to the name of the gun, that it was not dusted for fingerprints, that a police officer might purchase the type of weapon recovered from defendant's car, but that he could not carry a gun with that type of handle, and that the original handle could be removed, and new handles of the type on the subject gun could be placed on the gun. Furthermore, defense counsel's argument had invited rebuttal because he asked the jury to consider what the officers were doing outside of the defendant's home. Accordingly, while defendant denied relying on a planted-gun theory, his argument and questioning indicate otherwise,

and we find nothing improper with the prosecutor commenting on this theory.

Defendant further maintains that the trial judge erred by refusing to instruct the jury that possession is a voluntary act. The voluntary possession instruction which the defense tendered read:

> "Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control of the thing for a sufficient time to have been able to terminate his possession." (Illinois Pattern Jury Instructions, Criminal, No. 4.15 (2d ed. 1981).)

The trial court refused the instruction on the ground that it would be "confusing" to the jury.

As a general matter, the trial court is required to give the applicable Illinois Pattern Jury Instruction (IPI) unless it does not accurately state the law. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.) Here, there is no dispute that IPI Criminal 2d No. 4.15 accurately states the law. (*People v. Kissinger* (1975), 26 Ill. App. 3d 260, 325 N.E.2d 28.) The State, however, maintains that since the defendant denied possession altogether, rather than advance a theory of voluntary possession, the jury was given the proper instruction on possession, which read:

> "Possession may be actual or constructive. A person has actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing either directly or through another person." Illinois Pattern Jury Instructions, Criminal, No. 4.16 (2d ed. 1981).

■ We agree with defendant that he should not be denied the right to an instruction on voluntary possession merely because he denied knowledge of the gun altogether. A defendant is entitled to have the jury instructed not only as to the law applicable to the state of facts testified to but applicable to any state of facts which the jury may legitimately find from the evidence to have been proved. (*People v. Fryman* (1954), 4 Ill. 2d 224, 122 N.E.2d 573.) "This is true even if the facts on which the defense is based are inconsistent with the defendant's own testimony, since the defendant is entitled to the benefit of any defense shown by the entire evidence." (*People v. Robinson* (1987), 163 Ill. App. 3d 754, 761, 516 N.E.2d 1292, 1299.) Here, particularly given the position of the gun under the car mat, the jury might legitimately have inferred that the defendant had been aware of the gun, but not for a sufficient time to enable him to terminate his

possession. Accordingly, it was reversible error for the trial court to refuse to instruct the jury on voluntary possession.

Lastly, defendant contends that the trial judge erred in refusing to charge the jury as to impeachment by prior inconsistent statements. Defense counsel tendered, but the trial court refused, IPI Criminal 2d No. 3.11 on prior inconsistent statements, which read:

"The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witnesses in this courtroom." Illinois Pattern Jury instructions, Criminal, No. 3.11 (2d ed. 1981.)

■ When evidence of a witness' prior inconsistent statement is admissible to impeach his or her credibility, such evidence is not admitted as proof of the truth of the facts stated out of court, but to cast doubt on the testimony by showing his inconsistency. (*People v. Cannon* (1986), 150 Ill. App. 3d 1009, 502 N.E.2d 345.) An instruction to that effect should be given upon request. (*People v. Moses* (1957), 11 Ill. 2d 84, 142 N.E.2d 1.) A prior inconsistent statement encompasses omissions as well as affirmative statements. *People v. Smith* (1978), 67 Ill. App. 3d 672, 385 N.E.2d 44.

■ Minor discrepancies and inconsistencies in testimony do not render the testimony unworthy of belief, but go only to its weight. (*People v. Smith* (1978), 67 Ill. App. 3d 672, 385 N.E.2d 44; see *People v. Cannon* (1986), 150 Ill. App. 3d 1009, 502 N.E.2d 345 (where detective testified as to what defendant told him, but included a summary rather than defendant's exact words in his police report, court found no error in the trial judge's refusal to instruct the jury on prior inconsistent statements, IPI Criminal 2d No. 3.11, since it received the correct principle of law through IPI Criminal 2d No. 1.02).) The contradictory statements "must have the reasonable tendency to discredit a witness' testimony on a material matter" for reversal error to be found. *People v. Villa* (1981), 93 Ill. App. 3d 196, 416 N.E.2d 1226; see *People v. Mitchell* (1975) 27 Ill. App. 3d 117, 327 N.E.2d 158 (where the crux of the State's case was the testimony of Claude Harris, who was the only witness who linked the defendant directly to the killing, the court concluded that since Harris' credibility was directly in issue and since he had admitted giving two prior inconsistent statements on a material issue in the case, the defendant was entitled to have the jury instructed on the law regarding prior inconsistent statements).

■ Applying these principles to the case at bar, we conclude that none of the inconsistencies or omissions of which defendant complains are material to the issues of defendant's guilt of unlawful use of a weapon by a felon. That Officer Rodriguez preliminarily testified that he spotted defendant a block away from where he actually spotted him is not material to the question of defendant's guilt of the offense charged, especially since the initial stop and the location of defendant's arrest were in such close proximity. Likewise, Officer Luera's failure to include in his inventory slip for the gun the name of the officer who recovered the gun was not even remotely material to defendant's guilt, nor was Officer Rodriguez's omission in his report that he asked defendant for his license. Furthermore, we find Officer Rodriguez's testimony that defendant failed to stop his car when Rodriguez put on his flashing light, an assertion that he did not make in his police report, is not an omission sufficiently material to this offense to warrant an instruction on inconsistent statements.

Accordingly, we find that the correct principle of law applicable to the evidence before it was presented to the jury by IPI Criminal 2d No. 1.02, which read, in pertinent part:

> "You are the sole judges of the believability of the witnesses and the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in light of all the evidence in the case."

It is well established that the trial court is required to give the applicable IPI instruction unless it does not accurately state the law. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.) However, where a principle of law applicable to a case has already been covered correctly and sufficiently by an instruction which is given, it is not error for a court to refuse another instruction which states the same principle. (*People v. Cannon* (1986), 150 Ill. App. 3d 1009, 502 N.E.2d 345.) Here, since the applicable principle of law was covered in IPI Criminal 2d No. 1.02, we find no error in the trial court's refusal to give the jury IPI Criminal 2d No. 3.11.

Reversed and remanded.

MURRAY and GORDON, JJ., concur.