THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PERRY McKINLEY, Defendant-Appellant.

First District (1st Division)   No. 1—89—2492

Opinion filed December 14, 1992.—Rehearing denied March 4, 1993.—
Modified opinion filed March 8, 1993.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Judith M. Pietrucha, and Daniel Fahlgren, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Perry McKinley, and codefendant Ruben Johnson were charged in an indictment with aggravated criminal sexual assault and armed robbery. Following a jury trial, defendant was found guilty of aggravated criminal sexual assault and armed robbery and sentenced to consecutive prison terms of 60 years and 30 years, respectively, for each count. Codefendant Johnson was found not guilty on both counts. On appeal, defendant contends that: (1) the State failed to prove him guilty of aggravated criminal sexual assault beyond a reasonable doubt because the complainant did not adequately identify him as her assailant; and (2) he was denied a fair trial because the prosecutor made improper comments during closing argument. For the reasons below, we affirm the judgment of the trial court.

The record discloses the following relevant facts. At trial, complainant testified that on the morning of April 3, 1988, at 5:45 a.m., she left her apartment at 4753 North Malden Avenue in Chicago to take the bus to her job at O'Hare airport. It was still dark outside when she reached the bus stop 1½ blocks away from her apartment, but the bus stop was well lit. As she stood at the bus stop, a number of people drove by and offered her rides and she declined their offers. After about 15 minutes, complainant saw defendant and Johnson go into the building across the street from where she was waiting, 4752 North Malden. Defendant then came out again, walked toward a car, and then walked across the street toward complainant. Complainant

started to walk into the middle of the street toward defendant, and then went back to the bus stop and stood under the light. She was looking directly at defendant the entire time he was walking toward her.

Defendant approached complainant with his right hand under his brown leather jacket. He grabbed her right arm with his left hand and pointed a black gun held in his right hand at her chest. Defendant told her not to say or do anything. Complainant began crying and asked, "Where are you taking me?" and defendant told her to just follow him, that they were going to cross the street.

As they crossed the street, she saw Johnson pass them on the sidewalk and she looked at him because she thought he may be able to help her. However, as they approached the apartment building, Johnson pushed her up the stairs. Complainant was still crying and asked again "Where are you going to take me?" Defendant stated that they were going to the second floor. Defendant continued to point a gun to her chest as the two men led complainant to the second floor.

Once on the second floor, defendant and Johnson led complainant into a room and told her to face the wall. Johnson asked her if she had any money. As she opened her purse, defendant pointed a pen-type flashlight at the purse. She gave defendant $17 from her wallet and her $2 bus fare.

Johnson then asked complainant if she had any children. She said no, and then Johnson said, "Let's see what else do you have." Johnson then put his hands under her skirt and touched her vagina. Then he told her to take off her clothes. Complainant took off her clothes and one of the men pushed her onto a bed. Defendant unzipped his pants, told her to get on top of him and he put his penis in her vagina. She was able to see defendant's face at this time because he was directly in front of her. Then Johnson told her to put his penis in her mouth, and she did so. Then the men exchanged places and continued to sexually assault complainant. When Johnson put his penis into her vagina, defendant tried to put his penis into her anus. At this time she could see Johnson's face.

Defendant and Johnson threatened to kill complainant if she told the police what happened. Johnson slapped complainant's face and said "don't look at me," as he was raping her. Complainant then asked to be blindfolded, and Johnson blindfolded her. Defendant then told her to put his penis in her mouth. The two men then exchanged places again.

Complainant cried and begged defendant and Johnson to let her go. Defendant finally said, "Yes, we are going to let you go. Don't

worry." Defendant told her she could go, but to leave her blindfold on. When she took off the blindfold, complainant saw defendant's back as he walked out of the door.

Complainant put on her skirt, leaving her other clothes, and ran out of the building. She ran down the street toward her apartment building and passed a group of people standing near the bus stop. She heard a man say, "Oh, baby, you running around without your clothes on." She thought she recognized the voice as defendant's voice, but was not sure. She arrived back at her apartment and told her fiancee and roommate, Timothy Pattison, what happened. At that time she was crying and screaming. Pattison called the police.

The police arrived and complainant described her assailants as two black men, one short and the other tall, somewhere between five feet ten and six feet. She described defendant as the taller assailant and stated that he was wearing dark pants and a brown leather jacket. She did not describe defendant as having any facial hair.

The police took complainant to Weiss Memorial Hospital. Later that day, a detective drove complainant and Pattison from the hospital back to the scene of the assault. He drove around the neighborhood for approximately 15 to 20 minutes to see if she could identify a suspect. Complainant did not recognize anyone on the street.

The following day, at approximately 1 p.m., complainant and Pattison met Officer McNamara at the police station and they drove around the neighborhood again. After about 14 minutes, complainant saw defendant standing on the street, talking in front of a moving van. Complainant identified defendant as the man that raped her. At that time, defendant looked into the police car, saw complainant and ran down the alley. Officer McNamara chased defendant, eventually apprehending him on the first floor of a nearby apartment building. Officer McNamara returned to the squad car with defendant in custody and complainant again identified him as the man who raped her.

On April 15, the police called complainant and asked her to come to the station to view some pictures. She viewed photographs of defendant that were black and white and were taken in 1976 or 1978 and could not identify him from the pictures. At that time, she also viewed a lineup, but did not identify Johnson from the lineup.

Chicago police officer John McNamara testified on behalf of the State that on April 3, 1988, complainant described her assailants as two black males, one approximately six feet tall weighing approximately 170 pounds and wearing a dark leather jacket. McNamara stated that complainant described the second offender as a few inches shorter and wearing a black leather jacket. When complainant spotted

defendant on the street on April 4 and stated, "that's the man that raped me," Officer McNamara heard defendant say, "I have to get the fuck out of here," before he turned and ran down the alley. Upon defendant's arrest, police officers recovered a pen-type flashlight from defendant's right front pocket.

At the time of defendant's booking, defendant told Officer McNamara that he was five feet ten and 160 pounds. Defendant stated that he lived on the third floor at 4752 North Malden with his sister, Cynthia Hill. At the time of his arrest, defendant had a goatee-type beard and a mustache. Officer McNamara testified that at trial, defendant appeared larger and more muscular than at the time of his arrest, one year prior to trial.

Chicago police department evidence technicians Carl Brasic and Denny Veneigh testified that they found defendant's fingerprint on a malt liquor bottle at the scene of the attack. Detective Anthony Graffeo testified that he recovered a brown leather jacket from Cynthia Hill's apartment.

The State rested its case and defendant presented no witnesses on his behalf. The jury found defendant guilty of aggravated criminal sexual assault and armed robbery. Following a hearing in mitigation and aggravation, the trial judge sentenced defendant to consecutive prison terms of 60 years and 30 years, respectively, for each count. This timely appeal followed.

Defendant initially contends that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. In cases where a sex offense is charged, the appropriate standard of review of a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690.

■ Defendant first contends that complainant's identification was questionable under the factors used to evaluate the strength of a victim's identification set forth in *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317. The factors delineated by the *Slim* court in assessing an identification of a defendant are as follows: (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation.

Defendant argues that complainant had little opportunity to observe her assailant during the attack because, as she testified, it was dark outside and she was blindfolded when in the abandoned apartment. Defendant further contends that complainant's description of her assailant is not comparable to his physical characteristics because he had facial hair at the time of the attack and complainant did not tell police that her assailant had facial hair. In addition, defendant argues that complainant described her assailant as being taller and heavier than he was at that time. Finally, defendant argues that complainant failed to pick out his photographs from a group of pictures.

It is established that the sufficiency of identification evidence is a question for the jurors, and a reviewing court will not set aside a conviction unless the evidence is so unsatisfactory as to raise a reasonable doubt as to the guilt of the defendant. (*People v. Johnson* (1986), 114 Ill. 2d 170, 190, 499 N.E.2d 1355; *People v. Uzelac* (1988), 179 Ill. App. 3d 395, 534 N.E.2d 1250.) Identification by a single eyewitness is sufficient to support a conviction, provided the witness viewed the accused under circumstances permitting a positive identification. (*Slim*, 127 Ill. 2d at 309; *People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612.) Discrepancies in identification simply present a question of the credibility of the witness and the weight to be given to the testimony. *Slim*, 127 Ill. 2d at 308.

The record discloses that complainant had ample opportunity to view the defendant on the morning of April 3, 1988. At trial, complainant testified that on that morning, although it was dark outside, the bus stop where she stood was well lit and she could see defendant clearly as he crossed the street toward her. Defendant grabbed her from the bus stop and walked her to a building across the street. Complainant testified that once inside the building, defendant ushered her to an abandoned apartment and robbed her at gunpoint. Thereafter, defendant repeatedly sexually abused complainant, and complainant could clearly see defendant's face during the assault because he was directly in front of her at various times. Complainant was not blindfolded for the duration of the assault.

The record further reveals that in her initial description, complainant estimated that defendant was approximately 6 feet tall and weighed 170 pounds. Defendant was in fact 5 feet 10 inches and weighed 160 at the time of the offense. While few people are accurate judges of height and weight (see *People v. Evans* (1962), 25 Ill. 2d 194, 184 N.E.2d 836; *People v. Dixon* (1985), 133 Ill. App. 3d 1073, 480 N.E.2d 128), complainant's estimates here regarding height and weight were extremely accurate in that the description matched

defendant within 10 pounds in weight and two inches in height. Defendant's further argument that complainant failed to identify him from two photographs is without merit. The record shows that complainant positively identified defendant as her assailant twice on the day following the attack, both on the street and again after he was apprehended. See *Uzelac*, 179 Ill. App. 3d at 409.

In addition, complainant's failure to mention the fact that defendant had facial hair in her initial description is a minor discrepancy. Failure to notice facial hair is not fatal to a positive and otherwise credible identification. (See *Slim*, 127 Ill. 2d at 310; see also *People v. Nims* (1986), 156 Ill. App. 3d 115, 505 N.E.2d 670.) The findings of the trial court do not raise a reasonable doubt as to the defendant's identification and guilt.

■ Defendant additionally argues that the physical evidence produced by the State, specifically (1) fingerprints from a malt liquor bottle taken from the scene of the incident; (2) a pen-type flashlight found in defendant's possession upon arrest; and (3) a brown leather jacket recovered from defendant's sister Cynthia Hill's apartment, do not justify a finding of guilty beyond a reasonable doubt because they are merely "coincidental." Defendant cites no authority in support of his argument. Defendant's failure to provide this court with any legal argument or citation to supporting authority waives this issue for review. *People v. Barlow* (1989), 188 Ill. App. 3d 393, 544 N.E.2d 947.

Defendant also contends that he was prejudiced by several comments made by the prosecutor during closing rebuttal argument and thereby denied a fair trial. Defendant calls into question the following remarks made by the prosecutor during his closing rebuttal argument:

"[A]nd while counsel says they don't have to prove anything, they have no burden of proof, I would agree with that. Quite clearly that doesn't mean they have to sit on their hands and they can't call any witnesses."

Defense counsel objected to the comments at trial, and the trial judge sustained the objection, instructing the jury to disregard the comments. The prosecutor continued his argument, stating:

"If they really question the fingerprint examiner, the serologist, they have a right to testify they have a different finding, they have every right to have—."

The defense attorney objected and the trial judge again sustained the objection. When the prosecutor continued a third time with, "They have every right to have the same—" defense counsel's objection was overruled. The prosecutor then began a different line of argument. The record further indicates that defense counsel had commented dur-

ing closing argument that the State failed to produce the beer bottle from which evidence technicians lifted defendant's fingerprints, and also failed to conduct DNA tests on the fluids removed from complainant's body.

Defendant initially argues that the prosecutor's comments deemphasized the State's burden and improperly shifted the burden of proof to the defendant. Defendant quotes *People v. Burke* (1985), 136 Ill. App. 3d 593, 603, 483 N.E.2d 674, for the proposition that "[i]t is not proper to comment on reasonable doubt, or on the presumption of innocence, so as to de-emphasize the State's burden." Defendant's reliance in support of his argument is misplaced, however. In *Burke*, the court held that an improper remark by the prosecutor in closing: "Now in this case the defendant, as every other defendant is presumed to be not guilty until we say different," did not deprive defendant of a fair trial because immediately following the remark, the prosecutor informed the jury that the defendant was not required to prove anything and that the State had the burden of proving the defendant guilty beyond a reasonable doubt. *Burke*, 136 Ill. App. 3d at 602.

■ Similarly, the comments by the prosecutor in the present case do not amount to an improper shifting of the burden to defendant. Here, the prosecutor clearly stated that he agreed that the defendant did not have to prove anything. The record further indicates that the jury was instructed on the presumption of innocence and the State's burden of proving the guilt of the defendant beyond a reasonable doubt.

Defendant further relies on *People v. Nevitt* (1990), 135 Ill. 2d 423, 553 N.E.2d 368. There, the supreme court found that "it was error for the prosecutor to comment on defendant's failure to produce alibi witnesses *under the circumstances in this case.*" (Emphasis added.) (*Nevitt*, 135 Ill. 2d at 451.) The prosecutor in *Nevitt* stated in closing argument:

> "But what I'd like to know, Tommy Nevitt supposedly is not at work, well where are all the defense witnesses to tell you where Tommy Nevitt was in the morning?" (*Nevitt*, 135 Ill. 2d at 448.)

The court found that the prosecutor invited the jury to draw an inference that because defendant did not call an alibi witness to explain his whereabouts at the time of the alleged crime, then he must have been at the crime scene. The court held that a prosecutor may not comment on the failure of a defendant to produce a witness when there is no evidence that a witness exists. *Nevitt*, 135 Ill. 2d at 451-52.

*Nevitt* is distinguishable on its facts, as the statements by the prosecution in the present case are not similar. Where the complained-of remarks are within the rebuttal argument, they will not be held improper if they appear to have been provoked or invited by the defense counsel's argument. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291.) Here, the defense did not put on a case or present an alibi defense, and the prosecutor did not comment on defendant's failure to produce alibi witnesses.

The record indicates that the comments of the prosecutor in rebuttal were invited by the comments of defense counsel in his closing argument. Moreover, where the prosecutor does not state that defendant must provide the evidence that would create a reasonable doubt of guilt, but rather points to defendant's failure to submit any evidence that would tend to refute the case against him, the statements are within the bounds of proper comment. (*People v. Albanese* (1984), 104 Ill. 2d 504, 522, 473 N.E.2d 1246.) *Albanese* is strikingly similar to the present case. There, the prosecutor responded to defense counsel's invited comment in closing argument that no pathologists testified at trial, by stating in closing rebuttal argument that the defendant "has subpoena power ***. He can subpoena that pathologist if he likes," and "he can subpoena anybody or any document that he wishes to testify here before you." (*Albanese*, 104 Ill. 2d at 522.) Accordingly, we find that the prosecutor's comments during rebuttal argument in the present case were within the bounds of proper argument.

■ Defendant further argues that the prosecutor's comments were improper because the prosecutor attempted to finish his statement twice after defense counsel objected. Defendant relies on *People v. Larry* (1991), 218 Ill. App. 3d 658, 578 N.E.2d 1069, which is distinguishable on the facts. In *Larry*, the prosecutor at trial repeated the same basic question to a witness six times in a row regarding out-of-court statements, and defense counsel's six objections to the questions were sustained each time. Later, during closing and rebuttal closing arguments, the prosecutor referred to the significance of the out-of-court statements he attempted to elicit from the witness at trial. The court found that the prosecutor defied the trial court's rulings by repeating the same questions after objections were sustained and compounded the error by his comments in summation. (*Larry*, 218 Ill. App. 3d at 663, citing *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432.) By contrast, the prosecutor in the present case did not pursue an objectionable line of questioning at trial which was compounded by improper reference during closing argument. Any er-

ror in the present case was corrected by defense counsel's timely objection and the court's sustaining of the objection and instructions to the jury to disregard the comments. *Larry*, 218 Ill. App. 3d at 662.

Defendant also objects to the following comments made by the prosecutor during rebuttal:

"STATE: Again you can consider that but it's a lot easier to sit back and throw mud at everybody. The police, the State's Attorney's Office is lazy, [complainant] was lying—

DEFENSE: Objection. We never said she was lying.

COURT: The jury heard the evidence.

STATE: That's right, ladies and gentlemen you have heard the evidence in this case. Now, if you believe the defense argument everybody is lying. The officers that got up on that stand lied to you. And I'm so lazy that I don't even care about any evidence out there. I just figure what the hell, I'm going to go get it. If you really believe that, there's not much I can say that's going to change your mind.

\* \* \*

And it's nice to say well, yeah, she's telling the truth about the fact she got raped, but then in the next breath she's lying about who did it."

Defendant argues that the prosecutor misstated the law because it was not the defense's theory that the complainant was lying.

In general, courts in this State allow a great deal of latitude to the prosecution during closing and rebuttal arguments. (*People v. Williams* (1991), 147 Ill. 2d 173, 231, 588 N.E.2d 983; *People v. Smith* (1990), 199 Ill. App. 3d 839, 854, 557 N.E.2d 596.) When reviewing allegations of prosecutorial misconduct, the complained-of remarks must be considered in the context of the entire closing arguments of both the State and the defendant. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 175-76, 514 N.E.2d 970.) In closing argument, a prosecutor may comment on the evidence and legitimate inferences arising therefrom, and such comments do not exceed the bounds of proper argument. *Williams*, 147 Ill. 2d at 231.

Defendant relies upon *People v. Wilson* (1990), 199 Ill. App. 3d 792, 557 N.E.2d 571. There, the defendant was convicted of attempted criminal assault. The complainant admitted at trial that the defendant had not threatened, slapped or punched her, and neither party removed any clothing. The record indicated that complainant was not injured by defendant, and other than a self-inflicted wound, she had no bruises or other marks of a struggle. The record further disclosed that the principal witness for the prosecution had a motive

to lie about the assault. This court found that the evidence, while sufficient to prove guilt, was not overwhelming. In closing argument, the prosecutor stated:

"Is it curious to anyone the defense would have you believe everybody in this case is guilty except the Defendant? [State's witness] Kondal committed perjury. The State's Attorney is guilty of trying to frame someone. [The victim] is guilty." (*Wilson*, 199 Ill. App. 3d at 796.)

We held that the prosecutor misstated the law by suggesting incorrectly what the jury must find to reach a certain verdict and remanded the case for a new trial. *Wilson*, 199 Ill. App. 3d at 797.

■ In the present case, the defendant's sole argument was that he was wrongly identified as complainant's assailant. In her opening statement, defense counsel admitted that complainant was brutally sexually assaulted, but argued that defendant did not commit the assault. During cross-examination, defense counsel sought to impeach complainant's identification testimony by raising the issue that complainant had not told police that defendant had facial hair at the time of the assault. Defense counsel subsequently attacked complainant's identification in closing argument. Defense counsel never took issue with the evidence of the assault, and thereby made the issue of defendant's identity the central issue at the trial.

An examination of the record reveals that the comments in the present case do not rise to the level of the prosecutor's comments in *Wilson*. In *Wilson*, the sufficiency of the evidence, not identification, was the central issue at trial. Contrary to defendant's arguments, the record indicates that this was not a close case in terms of the evidence. We therefore find that the prosecutor's comments in the present case were based on legitimate inferences drawn from the evidence and do not exceed the bounds of proper debate. Even if the prosecutor's comments were improper, any impropriety constitutes harmless error under the circumstances, as the record demonstrates that the verdict would not have been otherwise had the comments not been made. See *Williams*, 147 Ill. 2d at 232.

For the above reasons, we affirm the finding of the trial court.

Affirmed as modified.

MANNING, P.J., and O'CONNOR, J., concur.