# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2029

MICHAEL CHARLTON,

*Petitioner-Appellee,*

*v.*

CECIL DAVIS, Superintendent
of the Indiana State Prison,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 04 C 608—**Allen Sharp**, *Judge.*

---

ARGUED NOVEMBER 30, 2005—DECIDED FEBRUARY 28, 2006

---

Before ROVNER, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Michael Charlton lived with Deborah Carpenter for about two and a half years in Terre Haute, Indiana. The relationship had its problems, and on August 21, 1995, Carpenter, who owned the house, called Charlton at work to inform him that she was throwing him out. Charlton came by to collect his belongings from the front porch, and the two met later that evening at a neutral location to discuss their separation.

At about 4 a.m. on August 23, 1995, according to Charlton (we emphasize this account is "according to Charlton"; Carpenter, as we will see, can't recount her version of the

events), Carpenter called him and invited him over. The two talked, then had sex on the couch. After they got dressed, Carpenter came toward him as if to give him a hug but instead reached behind and grabbed a loaded gun he had in his waistband. Charlton claims that, as he struggled to get the gun away from Carpenter, it accidentally discharged. She died of a gunshot wound to her head.

At Charlton's trial, the State presented evidence that told a different story. The back door to Carpenter's house was damaged and paint fragments and wood shavings were found on the floor. Also, the telephone lines to the house were cut and Charlton never called for emergency help. On top of that, a coworker testified that Charlton told him the day before that he planned to kill Carpenter. And, of course, the jury heard Charlton's "account," which seems to have a few holes in it. (For instance, why was he packing a loaded gun when he went to see Carpenter at the ungodly hour of 4 a.m.?) Ultimately, the jury found Charlton guilty of murder, and the judge sentenced him to a term of 60 years. Indiana courts affirmed the conviction on direct review and denied Charlton's claims for collateral relief.

Charlton then moved to federal court and filed a habeas petition under 28 U.S.C. § 2254. Appearing *pro se*, he claimed that he had received ineffective assistance of counsel at trial because his attorney failed to propose a jury instruction on the defense of "accident." He also argued that his due process rights were denied when the trial judge declined to give a jury instruction on the lesser included offense of reckless homicide. The district court granted relief based on the ineffective assistance claim, and the State now appeals. As usual in habeas cases, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *Harding v. Walls*, 300 F.3d 824, 827 (7th Cir. 2002).

In granting Charlton's habeas petition, the district court cited as "binding precedent" our decision in *Sanders*

*v. Cotton*, 398 F.3d 572 (7th Cir. 2005). Without further analysis, the district court said it found "[t]he procedural setting of *Sanders* . . . so similar to this case" that it was "hard pressed to find a principled distinction." In fact, while both cases involved jury instructions and claims of ineffective assistance, they implicated different legal concepts. We reverse the district court because, as we will explain, it failed to correctly apply the relevant legal principles.

Whereas Charlton's case centers on Indiana's former jury instruction regarding "accident,"[1] a defense bearing on culpability, *Sanders* concerned "sudden heat." Sudden heat, a mitigating factor in homicide, refers to the sort of extreme mental or emotional disturbance which is "[t]he distinguishing factor between murder and manslaughter . . . ." *McBroom v. State*, 530 N.E.2d 725, 728 (Ind. 1988).[2] Under Indiana law, if a defendant charged with murder produces any appreciable evidence that he committed the crime under sudden heat, the trial court must give a voluntary manslaughter instruction, and the burden shifts to the prosecution to prove the absence of sudden heat. *Sanders*, 398 F.3d at 576-77 (citing *Roark v. State*, 573 N.E.2d 881, 882 (Ind. 1991), and *McBroom*, 530 N.E.2d at 728). In other

---

[1] Before it was withdrawn in 2002, the accident defense had three elements, which the State had the burden of disproving beyond a reasonable doubt: (1) the conduct must have been unintentional, or without unlawful intent or evil design on the part of the accused; (2) the act resulting in injury must not have been an unlawful act; and (3) the act must not have been done recklessly, carelessly, or in wanton disregard of the consequences. Indiana Pattern Jury Instructions-Criminal (2d ed. 1991).

[2] Indiana law defines "sudden heat" as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man; it prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection." *McBroom*, 530 N.E.2d at 728.

words, the absence of sudden heat becomes a distinct additional element the State must prove beyond a reasonable doubt in order to obtain a conviction for murder rather than manslaughter.

In *Sanders*, we found that the trial court had erroneously refused the defense attorney's request for an instruction which properly stated the law on sudden heat. *Id.* at 582. The trial court mentioned sudden heat in its instructions on manslaughter but misstated the State's burden of proof and did not make clear that absence of sudden heat was an element of murder. *Id.* Erroneous instructions on the elements of an offense or the State's burden to prove guilt beyond a reasonable doubt are a violation of a defendant's due process right under the Fourteenth Amendment. *Id.* at 581-82 (citing *In re Winship*, 397 U.S. 358, 364 (1970), and *Cole v. Young*, 817 F.2d 412, 423 (7th Cir. 1987)). Moreover, since appellate counsel failed to raise these issues on direct appeal, we found that representation deficient and prejudicial under *Strickland v. Washington*, 466 U.S. 668, 686 (1984): had appellate counsel properly identified the trial court's errors, the defendant would have been entitled to a new trial. *Sanders*, 398 F.3d at 585.

The issue in Charlton's case, on the other hand, is quite different. Whereas evidence of sudden heat introduces a new element to the offense, the defense of accident is simply another way of talking about culpability or intent. As long as the jury is properly instructed on the elements of the offense and the requirement that the State prove all relevant facts beyond a reasonable doubt, an accident instruction (at least as it was formulated in Indiana law at the time of Charlton's 1996 trial) does not give a defendant any additional protection against a wrongful conviction. It is just the negative of what the State must prove. Thus, one key difference between this matter and *Sanders* is that Charlton's case does not present a viable due process claim.

Charlton proceeds from a false premise: that he was "entitled" to the accident instruction—indeed, that the instruction was "unambiguously required." We think this overstates his case. A defendant is not entitled, in the abstract, to any particular instruction. Under Indiana law, he is entitled to tender proposed instructions that (1) correctly state the law, (2) are supported by evidence in the record, and (3) are not covered by other instructions. *Matheney v. State*, 583 N.E.2d 1202, 1205 (Ind. 1992). While as a "general principle . . . a defendant is entitled to an instruction on any defense which has some foundation on the evidence . . . it is equally well settled that it is not reversible error for the trial court to refuse a tendered instruction when the subject matter of that instruction is covered by other instructions given by the court." *Warren v. State*, 470 N.E.2d 342, 344 (Ind. 1984) (citations omitted); *see also Daniel v. State*, 582 N.E.2d 364, 370 (Ind. 1991) ("[J]ury instructions are to be considered as a whole and in reference to each other. Error in a particular instruction will not require reversal unless the entire charge misleads the jury as to the law in the case." (citations omitted)), *cert. denied*, 506 U.S. 838 (1992).

For Charlton to claim that the shooting of Carpenter was an accident is simply another way of saying he did not act with the criminal intent required under Indiana's murder statute. *See* Ind. Code § 35-42-1-1. If the jury thought Carpenter had received her fatal wound as the result of an accident, it could not have found, as it did, that Charlton intentionally shot her. Thus, as long as the jury was properly instructed on the elements of murder and the State's burden to proof—which Charlton does not dispute—the substance of the accident instruction was covered by other instructions given, and its omission did not mislead the jury as to the law.

Our conclusion that the accident instruction is really mere surplusage is confirmed by the fact that Indiana

withdrew it from its pattern jury instructions in 2002. The Indiana Judges Association Criminal Instructions Committee said it "could not conceive of a situation in which the principles incorporated in an instruction on 'accident' would not also be conveyed to the jury by the standard pattern charges on the elements of the crime, the State's burden to prove, etc." Indiana Criminal Pattern Jury Instructions, draft 3d ed. (2002), http://www.in.gov/ judiciary/ center/docs/crim_pat_jury_instruct_0902.pdf; *see also Springer v. State*, 798 N.E.2d 431, 436 (Ind. 2003) (defendant's substantial rights were not prejudiced by the lack of an accident instruction).

To prevail on his federal claim of ineffective assistance, Charlton must show that his trial counsel's failure to request the accident instruction rendered the attorney's performance objectively unreasonable and that the deficient performance prejudiced the trial's outcome. *Strickland*, 466 U.S. at 686. Since giving an accident instruction, although recognized in Indiana law at the time, was in no sense essential to protect Charlton against a wrongful conviction, his attorney's decision not to ask that it be given was not a failure of "reasonable professional judgment." *Id.* at 690.[3] And since the substance of the acci-dent defense was covered by other instructions, its omission could not have prejudiced the outcome of Charlton's trial. Thus, we

---

[3] During closing argument, Charlton's trial counsel, Daniel Weber, sought to cast doubt on the State's evidence; argued that the shooting could not have been intentional; and reminded the jury of the State's burden to prove intent beyond a reasonable doubt. During state postconviction proceedings, Weber testified that he chose to emphasize a theory of the case as reckless homicide, rather than pursue an accident instruction, because he doubted the jury would regard evidence it heard about the trajectory of the bullet through Carpenter's skull as consistent with an accident defense.

conclude that Charlton did not receive ineffective assistance of counsel.

Having explained why the district court misapprehended the applicable legal principles in granting the habeas petition, we turn to the additional arguments Charlton offers for why we should nonetheless affirm the judgment.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner for habeas relief must establish that the state court proceedings in his case resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The relevant decision for purposes of our assessment is the decision of the last state court to rule on the merits of the petitioner's claim, *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)—in this case, the decision of the Indiana Court of Appeals denying postconviction relief.

Charlton contends that the state court's ruling was contrary to federal law because it did not set forth *Strickland* as the relevant precedent; did not determine whether counsel's conduct was objectively unreasonable as of the time of the trial, *see Strickland*, 466 U.S. at 690; and, under *Strickland*'s prejudice prong, did not determine whether there was a "reasonable probability" the outcome of Charlton's trial would have been different if his attorney had requested the accident instruction, *id.* at 694.[4]

---

[4] Charlton also contends that the state court based its decision on an unreasonable application of federal law and an unreasonable determination of the facts because it failed to recognize *Sanders*

(continued...)

In a habeas case, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. Although the state appellate court referred to an Indiana case decided several years after Charlton's trial (*Springer v. State*, 798 N.E.2d 431 (Ind. 2003), which had found the accident instruction unnecessary), the court did not, on our reading, consider itself bound by the case as precedent. Rather, the court concluded that *Springer* simply confirmed that the substance of the accident instruction will typically be covered by other instructions on elements of the offense and burden of proof—instructions the appellate court specifically reviewed and found correct. And since the jury was properly instructed on what the State had to show, there is no reasonable probability that an accident instruction would have changed the trial's outcome. The state court's decision was not contrary to federal law.

Finally, Charlton suggests that his federal due process rights were violated when the trial court refused his requested instruction on the lesser included offense of reckless homicide. In noncapital cases, failure to charge a lesser included offense will be found to violate due process "only when the error is so fundamental a defect as to cause a fundamental miscarriage of justice." *Robertson v. Hanks*, 140 F.3d 707, 710 (7th Cir. 1998) (internal quotation marks omitted).

The record of the state postconviction proceedings indicates that reckless homicide, rather than accident, was

---

[4] (...continued)
as governing precedent. We have already explained why that argument must fail.

trial counsel's preferred theory. Given that he admitted his "involvement" with the shooting but denied wrongful intent, Charlton now argues, failure to instruct on reckless homicide untenably left the jury with only two alternatives: convict on murder or acquit.

On direct appeal, the Supreme Court of Indiana gave extended consideration to Charlton's reckless homicide argument. *See Charlton v. State*, 702 N.E.2d 1045, 1048-49 (Ind. 1998). That court concluded that Charlton had "not presented or referred us to any evidence showing that his conduct was reckless, much less showing that there was a serious evidentiary dispute over whether his conduct was reckless." *Id.* at 1049. Even giving Charlton the benefit of the doubt on whether he properly preserved this issue as a federal, as opposed to state law, claim, *see Sweeney v. Carter*, 361 F.3d 327, 332-33 (7th Cir. 2004), our own review does not give us cause to disturb the state supreme court's finding.

The judgment of the district court granting Charlton's petition for a writ of habeas corpus is REVERSED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*