UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2006
Decided July 24, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-3326

| | |
|---|---|
| WALTER BLOUNT, <br>     *Petitioner-Appellant,* <br><br>   v. <br><br> DEIRDRE BATTAGLIA, <br>     *Respondent-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br> No. 04 C 4007 <br><br> Matthew F. Kennelly, <br> *Judge* |

**O R D E R**

Illinois prisoner Walter Blount is serving a 65-year sentence for his role in a gang-related drive-by shooting. After exhausting his state-court remedies, he petitioned the district court for a writ of habeas corpus. The district court denied the petition but granted a certificate of appealability on the issue of whether Blount received ineffective assistance of counsel. Blount contends that he was prejudiced by his attorney's failure to request jury instructions about (1) testimony by an accomplice-witness, and (2) a witness's prior inconsistent statements. Because the Appellate Court of Illinois reasonably concluded that Blount was not prejudiced by his lawyer's performance, we affirm the district court's judgment.

I.

On July 9, 1997, 71-year-old Mary Harris was attempting to disperse a crowd of young people who had gathered outside her home at 1608 South 19th Street in Maywood, Illinois.  Unfortunately, the house was located within the territory of the Black P-Stones, a street gang, and earlier in the day members of that gang had fired shots at a member of the Four Corner Hustlers, a rival gang.  As Harris was attending to her property, a Chevrolet Citation pulled slowly into a nearby intersection.  The front-seat passenger stuck a gun out the window and fired between four and six shots into the crowd.  One bullet struck and killed Harris, and another critically injured an 18-year-old in the group.  The car sped away.

Walter Blount was later fingered as the driver of the car.  He was tried in the Circuit Court of Cook County on charges of murder, attempted murder, and aggravated battery with a firearm under a theory of accomplice liability.  In Illinois, a person is guilty of a crime committed by another if, before or during the crime, and with the intent to promote or facilitate the crime, he "solicits, aids, abets, agrees or attempts to aid [another person] in the planning or commission of the offense."  720 ILCS 5/5-2(c).

The chief witness against Blount at trial was Brian Holmes.  Holmes, a fellow member of the Four Corner Hustlers, admitted that he was a passenger in the backseat of the car during the shooting.  He gave a statement to police at the time of his arrest.  After he was charged with first degree murder, he agreed to testify against both Blount and Marcus Blackwell, the shooter, in exchange for a reduced sentence.  He later pleaded guilty to aggravated battery with a firearm and was sentenced to six years in prison.

Holmes testified that on the day of the shooting, he, Blount, Blackwell, and KeShawn Huston had been riding around Chicago all day before returning to Maywood.  At around 9:30 p.m., they ran into fellow gang member Brian Moore, who told them that some Black P-Stones had shot at him earlier that day.  Blount, Blackwell, Holmes, and Huston drove to pick up a .380 semiautomatic handgun that was stashed in some bushes, and proceeded into the rival gang's territory, with Blount driving and Blackwell in the front passenger seat.  According to Holmes, Blount drove through the intersection of 19th and Van Buren Streets three or four times before remarking "I think that's them," in reference to the crowd of people outside Mary Harris's home.  Blount then drove through the intersection once again, slowly, and Blackwell fired the shots out the window.

Three other eyewitnesses testified against Blount.  Kecia Williams, Nayania Poole, and Antoinette Hughes had been standing in front of Harris's house before the shooting.  At around 11:15, when Harris asked the group to leave, the girls

began walking away from the house. Soon after, they saw a burgundy Chevrolet Citation heading north on 11th Avenue at a slow speed. Hughes asked Blount for a ride home; he smiled at her but kept on driving.

Finally, Maywood police officer John Mazariegos testified that he responded to a report of shots fired at about 11:20 p.m. The report identified the suspects as three black males in a red Chevrolet hatchback. Officer Mazariegos observed the car the next morning and began pursuit. When the car was about one block in front of him, and still moving, three occupants jumped out and fled. Though the officer did not apprehend the men at the time, Blackwell, Blount, and Holmes were later arrested. At a lineup, witnesses Willams, Poole, and Hughes all identified Blount as the driver of the car on the night of the shooting, and Williams and Hughes identified Holmes as a back-seat passenger.

The jury found Blount guilty on all counts. He was sentenced to a 45-year term of imprisonment for murder and a consecutive 20-year term for attempted murder and battery. The Appellate Court of Illinois affirmed. Blount then filed a petition for postconviction relief, arguing in relevant part that his trial counsel was ineffective for failing to request two jury instructions relating to Holmes's testimony. The first admonishes jurors that testimony of an accomplice-witness is "subject to suspicion and should be considered by you with caution." *See* Ill. Pattern Jury Instr. Crim. 3.17. The second advises that a witness's believability may be challenged with evidence that on a prior occasion he made statements inconsistent with his trial testimony and instructs that such evidence "may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom." *See* Ill. Pattern Jury Instr. Crim. 3.11. Blount cited as major inconsistencies several facts from Holmes's trial testimony he had not mentioned in earlier statements to police.

The trial court summarily denied Blount's petition. The state appellate court affirmed, concluding that Blount could not establish prejudice as a result of his attorney's failure to request either jury instruction. With respect to the first argument, the court reasoned that the jury had been instructed to weigh each witness's credibility and had been made aware of Holmes's plea deal through cross-examination. Moreover, "an overwhelming amount of evidence established that defendant was the driver when the shooting occurred." As to the second argument, the court reasoned that the inconsistencies Holmes cited did not go to a "material matter" as required to instruct the jury on the issue of prior inconsistent statements by a witness. The Supreme Court of Illinois denied Blount's application for leave to appeal.

Blount then filed a petition under 28 U.S.C. § 2254, raising the same ineffective-assistance claim. The district court first determined that, whether or

not the evidence of Blount's guilt was "overwhelming," the state appellate court did not unreasonably apply federal law in concluding that Blount was not prejudiced by the lack of a jury instruction on accomplice-witness testimony given the sum of the evidence and the other jury instructions. Likewise the district court held that Blount was not prejudiced by counsel's failure to request an instruction on prior inconsistent statements, concluding that "[f]our of the alleged omissions . . . were, at most, relatively insignificant details" and the fifth was not an inconsistency at all. The court denied Blount's petition but granted a certificate of appealability.

## II.

On appeal Blount renews his argument that his trial attorney was ineffective, contending that if his lawyer had ensured the inclusion of the two instructions in the charge to the jury, Holmes's testimony would have been undermined and he would not have been convicted.

The district court's decision to deny the habeas corpus petition is subject to *de novo* review. *See Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). A state prisoner seeking habeas corpus relief must establish that the criminal proceedings in his case resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d); *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). This court looks to the decision of the last state court to rule on the merits of the petitioner's claim: here, the state appellate court's decision affirming the denial of postconviction relief. *See Charlton*, 439 F.3d at 374.

Blount's ineffective-assistance claim is governed by the principles established in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the substandard performance prejudiced him—that is, that but for counsel's errors there is a reasonable probability that the result of the trial would have been different. *See id.* at 687-88, 694. We do not apply the principles of *Strickland* directly, but instead we analyze whether the state courts reasonably applied federal law in concluding that Blount's counsel was not ineffective. *See Conner v. McBride*, 375 F.3d 643, 657 (7th Cir. 2004). Our review is "quite deferential,"and we will not disturb the state court's decision as long as it is objectively reasonable, even if it is substantively incorrect. *See Barrow*, 398 F.3d at 603.

Blount devotes a significant portion of his brief to arguing that counsel's performance was deficient, despite the Illinois appellate court's focus on the lack of prejudice. He seems to suggest that, because he was entitled to the instructions

under "controlling State law," he need not show prejudice. Although the Illinois courts have expressed doubt that valid strategic reasons exist for failing to request the accomplice-witness instruction, *see People v. Davis*, 819 N.E.2d 1195, 1200 (Ill. App. 2004), that failure does not amount to *per se* ineffectiveness as Blount suggests. A defendant must still show that counsel's decision not to request the instruction prejudiced him. *See id* at 1201.

To the extent that Blount addresses the question of prejudice with respect to the accomplice-witness instruction, he argues from the faulty premise that the jury could not have considered Holmes's testimony at all if counsel had tendered the proper jury instruction. For example, he labels Holmes the "sole, real accusatory witness against defendant" and states that "[w]ithout [Holmes's] testimony, defendant is merely a person driving a car when a passenger shot without any evidence defendant is accountable." But what the jury would have done "without" Holmes's testimony is irrelevant. The admissibility of Holmes's statements is not at issue; the jury instruction addressed only how that testimony was to be weighed.

Regarding the accomplice-witness instruction, the Illinois appellate court concluded that Blount suffered no prejudice because there was considerable evidence against him, his trial was fair, the jury knew of Holmes's plea agreement with the state, and, the court emphasized, another instruction admonished the jury to weigh Holmes's credibility. Pattern Instruction 1.02 advises the jurors that they are the sole "judges of the believability of the witnesses" and instructs them to consider, when evaluating a witness's credibility, "any interest, bias, or prejudice he may have." Jury instructions are viewed in their entirety. *See Charlton v. Davis*, 439 F.3d 369, 375 (7th Cir. 2006) (explaining that no prejudice resulted from counsel's decision not to request an instruction the substance of which "was covered by other instructions"); *see Conner*, 375 F.3d at 667. Most importantly, the jury knew that Holmes had received a substantial benefit in exchange for testifying against Blount; that fact was drawn out on cross examination and repeated during closing argument. We will not disturb the Illinois appellate court's reasonable conclusion that counsel's failure to request the accomplice-witness instruction did not sway the outcome of the trial.

Blount also argues he was prejudiced by counsel's failure to tender IPI 3.11, regarding Holmes's prior inconsistent statements. He asserts that Holmes made five key statements at trial that Holmes had not made previously: that Blount and the others had driven around for nine hours on the day of the shooting; that Blackwell retrieved the gun from a bush in an alley; that Brian Moore was the reason for the shooting and was in the car when it happened; that Blount stated "I think that's them" before the shooting; and that KeShawn Huston was a passenger in the car.

As a preliminary matter, it should be noted that Holmes did *not* testify that Brian Moore was one of the four men in the car during the shooting. Moreover, the Illinois appellate court noted that on the day of his arrest, though not in his initial statement to police, Holmes told the assistant state's attorney that Blount had stated "I think that's them," so there was no inconsistency. The court ultimately concluded that Blount was not prejudiced because counsel lacked a solid basis on which to request the jury instruction: although it is warranted by a witness's prior omissions as well as affirmative statements, it is required only if the inconsistency goes to "a material matter." *E.g., People v. Eggert*, 754 N.E.2d 474, 477 (Ill. App. 2001). The court deemed the inconsistent statements Blount identified as peripheral, not material.

The Illinois appellate court reasonably applied federal law in concluding that Blount was not prejudiced. The instruction would not have been given if requested. Moreover, it is difficult to see how the instruction would have helped Blount had it been given. The instruction restricts the jurors' use of evidence, allowing them to consider prior inconsistent statements only for the "limited purpose of deciding the weight to be given the testimony" at trial. Blount, however, portrays IPI 3.11 as if it orders the jury to weigh inconsistent statements against Holmes's credibility (much like IPI 3.17 advises that an accomplice's testimony is inherently suspicious). For example, he faults his attorney for "not instructing the jury as to the effect of inconsistent statements," deems the omission of this instruction a "failure to instruct concerning impeachment," and argues that the instruction "could cause the jury to doubt Holmes's credibility." Blount's argument reflects a misunderstanding of the reason for the instruction: simply to limit the purposes for which the jurors might consider the evidence. And, we have already noted, IPI 1.02 broadly instructs the jury on weighing the credibility of witnesses. *See People v. Larry*, 578 N.E.2d 1069, 1075 (Ill. App. 1991) (no error in not giving IPI 3.11 because IPI 1.02 covered the "applicable principle of law").

In light of the deferential standard we must apply, Blount has not established that the Illinois appellate court unreasonably concluded that no prejudice resulted from counsel's failure to request the instructions. Accordingly, the judgment of the district court is AFFIRMED.